NO. 14-15629-F
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
_____

**TONY SPEIGHT AND FELICE CUNNINGHAM,**
**Individually and as Parents and Natural Guardians of D.M.C., a Minor,**

Plaintiffs-Appellants,

v.

**BENJAMIN W. GRIGGS and FULTON COUNTY, GEORGIA**,

Defendants-Appellees.
_____

On Appeal from the United States District Court for the Northern District of
Georgia, Atlanta Division, 1:11-cv-03163-AT, Hon. Amy Totenberg
_____

**BRIEF OF APPELLEE FULTON COUNTY, GEORGIA**
_____

R. DAVID WARE, County Attorney
KAYE W. BURWELL, Deputy County Attorney
STEVEN E. ROSENBERG, Senior Attorney
WALTER B. YARBROUGH, Senior Attorney

OFFICE OF THE FULTON COUNTY ATTORNEY
141 Pryor St., S.W.
Suite 4038
Atlanta, Georgia 30303
(404) 612-0246
walter.yarbrough@fultoncountyga.gov
Attorneys for Appellee Fulton County, Georgia

**NO. 14-15629-F**
*Speight v. Griggs*

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1, the undersigned counsel for Defendant-Appellee Fulton County, Georgia certifies that the following is a full and complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations (including those related to a party as a subsidiary, conglomerate, affiliate, or parent corporation) that have an interest in the outcome of this particular case:

Burwell, Kaye Woodard - Counsel for Fulton County, Georgia

Cunningham, Felice – Plaintiff-Appellant

Dearing, Jr., James E. – Attorney for Benjamin W. Griggs

"D.M.C." – son of Felice Cunningham and Tony Speight

Fulton County, Georgia –Defendant-Appellee

Griggs, Benjamin W. – Defendant-Appellee

Jones, Craig T. – Attorney for Felice Cunningham and Tony Speight

Office of the Fulton County Attorney - Counsel for Fulton County, Georgia

The Orlando Firm, P.C. – Counsel for Felice Cunningham and Tony Speight

Rosenberg, Steven E. – Counsel for Fulton County, Georgia

C-1 of 2

**NO. 14-15629-F**
***Speight v. Griggs***

Speight, Tony – Plaintiff-Appellant

Totenberg, Hon. Amy – Trial Judge, United States District Court, Northern

District of Georgia

Ware, R. David - Counsel for Fulton County, Georgia

Yarbrough, Walter B. – Counsel for Fulton County, Georgia


Respectfully submitted this 25th day of February, 2015.

<u>***/s/ Walter B. Yarbrough***</u>
Walter B. Yarbrough
Georgia Bar No. 780353
Attorney for Appellee Fulton County

C-2 of 2

# <u>TABLE OF CONTENTS</u>

**Page(s)**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT …………………………………….................C-1

TABLE OF CONTENTS………………………………………………………..i

TABLE OF AUTHORITIES ………………………………………..…….iii

STATEMENT REGARDING ORAL ARGUMENT ……………………….vi

JURISDICTIONAL STATEMENT …………………………………....…vii

STATEMENT OF ISSUES ………………………………………….…..1

STATEMENT OF THE CASE...............................................................1

    I. Course of Proceedings and Dispositions in the District Court ...................1

    II. Statement of Facts…………………………………………………..4

    III. Standard of Review…… ...........................................……………..13

STATEMENT OF THE ARGUMENT …………………....……………...…15

ARGUMENT ……………………………………………………..……15

I.    This Court Lacks Subject Matter Jurisdiction Over Appellants' Appeal Because Appellants Have Failed to Cross-Appeal and Waived their Right to Appeal…………………………………………………………..15

II.    Appellants Cannot Establish a Claim Against Fulton County For Defective Customs, Training or Policies Regarding the Use of Force or the Use of Firearms……………………………………………………..18

    A. No Failure To Train …………………………….…………….……..23

    B. No Actionable Pattern or Practice…………………………….........28

    C. No Municipal Liability for Accidental Discharge……………………...29

i

CONCLUSION …………………………………………………….………..31

CERTIFICATE OF COMPLIANCE…………………………………………...32

CERTIFICATE OF SERVICE…………………………………………………33

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### **<u>Supreme Court Cases</u>**

<u>Monell v. Dept. of Social Services</u>, 436 U.S. 658 (1978)……………….......1,19,20

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986)……….…………………….....14

<u>Scott v. Harris</u>, 550 U.S. 372 (2007)……………………………………….....14

<u>Juidice v. Vail</u>, 430 U.S. 327 (1977)……………………………………….....16

<u>City of Canton v. Harris</u>, 489 U.S. 378 (1989)…………...……......…19,20,22,23,25

<u>Board of County Com'rs v. Brown</u>, 520 U.S. 397 (1997)………………………...20

<u>General Elec. Co. v. Joiner</u>, 522 U.S. 136 (1997)………………………...……24

<u>Singleton v. Wulff</u>, 428 U.S. 106 (1976)……………………………………….30

<u>Brower v. County of Inyo</u>, 489 U.S. 593 (1989)…………………………………….31

### **<u>Eleventh Circuit Cases</u>**

<u>Speight v. Griggs</u>, 579 Fed. App'x. 757 (11th Cir. 2014).  (11th Cir. 2014) ..............3

<u>Cofield v. Goldkist, Inc.</u>, 267 F.3d 1264, (11th Cir. 2001)….…………..………13

<u>Sarfati v. Wood Holly Associates</u>, 874 F.2d 1523, (11th Cir. 1989)……..………14

<u>American Gen'l Life Ins. v. Schoenthal Family, LLC</u>, 555 F.3d 1331 (11th Cir. 2009)………………………..………………………………………………….15,30

<u>Nat'l Parks Conservation Ass'n v. Norton</u>, 324 F.3d 1229 (11th Cir. 2003)………..
……................................................................................…15,16,17

<u>Jackson v. Humphrey</u>, No. 14-10183, 2015 WL 151116, * 5 (11th Cir. Jan. 13, 2015)……………………………………………………….........16,17,18

Hudson v. Hall, 231 F.3d 1289 (11th Cir.2000)……………..………………16,18

Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326 (11th Cir.1999)…………..16

McQueen v. Johnson, 506 Fed.Appx. 909 (11th Cir.2013)………………………16

Grech v. Clayton Cnty., 335 F.3d 1326 (11th Cir. 2003)………..……………..19,21

Mcdowell v. Brown, 392 F.3d 1283 (11th Cir. 2004)…………………..……....19,23

Perez v. Miami-Dade County, 168 F. App'x 338 (11th Cir. 2006)…………..…19,21

Gold v. City of Miami, 151 F.3d 1346 (11th Cir. 1998)……………...…20,22,25

Young v. City of Augusta, Georgia, 59 F.3d 1332 (11th Cir. 1994)…………….....20

Church v. City of Huntsville, 30 F.3d 1332 (11th Cir. 1994)……………………...20

Wright v. Sheppard, 919 F.2d 665 (11th Cir. 1990)……………………….........20,25

Kerr v. City of West Palm Beach, 857 F.2d 1546 (11th Cir. 1989)……………....20

Sewell v. Town of Lake Hamilton, 117 F.3d 488 (11th Cir. 1997)……………….21

Wright v. Sheppard, 919 F.2d 665 (11th Cir. 1990)………………………………22

Riley v. Newton, 94 F. 3d 632 (11th Cir. 1996)…………………………….....23

Belcher v. City of Foley, Alabama, 30 F. 3d 1390 (11th Cir. 1994)…………...…23

Hall v. Smith, 170 Fed. App'x. 105 (11th Cir. 2006)…………………………..24

West v. Tillman, 496 F.3d 1321 (11th Cir. 2007)…………………...………...…25

Baylor v. Jefferson County Bd. of Educ., 733 F.2d 1527 (11th Cir. 1984)……..…28

American Gen'l Life Ins. v. Schoenthal Family, LLC, 555 F.3d 1331 (11th Cir. 2009)………………………………………………………………………....28

Hartley v. Parnell, 193 F.3d 1263 (11th Cir. 1999)……………………….....28

iv

## Other Circuit Cases

Kessler v. National Enterprises, Inc., 203 F.3d 1058 (8th Cir. 2000)……………16

Northwestern Indiana Tel. Co. v. FCC, 872 F.2d 465 (D.C. Cir. 1989)………….16

Art Midwest, Inc. v. Atlantic Limited Partnership, 742 F.3d 206 (5th Cir. 2014)…
……………………………………………………………………............16,17

Pineda v. City of Houston, 291 F.3d 325 (5th Cir.2002)………………………....25

McCoy v. City of Monticello, 411 F.3d 920 (8th Cir. 2005)…………….……30,31

## District Court Cases

Reyes v. City of Miami Beach, No. 07-22680, 2008 WL 686958, at *13 (S.D.Fla. 2008)…………..……………………………………………………………..24

Rosario v. Miami-Dade County, 490 F.Supp.2d 1213, 1225 (S.D. Fla. 2007)…………………………………………………………………………24

## Federal Statutes

28 U.S.C. §1331………………………………………………………..vii

28 U.S.C. §1367………………………………………………………..vii

Fed. R. Civ. P. 56 ..........................................................................................13,14

42 U.S.C. § 1983…...…………………………………………19,20,22,23,24,25,31

F.R.A.P. 28(i)...............................................................................................21

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Oral argument is not necessary in this case because the facts, legal arguments and legal authority are adequately presented in the briefs and record, and the decision process would not be significantly aided by oral argument.

## JURISDICTIONAL STATEMENT

Pursuant to 28 U.S.C. §1331, the United States District Court for the Northern District of Georgia, Atlanta Division had subject matter jurisdiction because Appellants' 42 U.S.C. §1983 claims against Appellees for alleged violation of the Fourth Amendment to the United States Constitution involved a federal question. Pursuant to 28 U.S.C. §1367, the District Court also had supplemental jurisdiction over Appellants' state claims, which are not before the Court on this appeal.

On September 24, 2013, the District Court granted Defendants' respective Motions for Summary Judgment as to all claims, except Appellants' negligence claim against Defendant Griggs. (Doc. 94). The District Court also denied Appellants' Motion for Partial Summary Judgment regarding their Fourth Amendment and negligence claims against Griggs. (Doc. 94). On October 19, 2013, Appellee Griggs filed a Notice of Appeal challenging the District Court's partial denial of his Motion for Summary Judgment. (Doc. 105). At the time of Griggs' appeal, Appellants did not cross-appeal the District Court's denial of their Motion for Partial Summary Judgment, its partial grant of Griggs' Motion for Summary Judgment or its grant of Fulton County's Motion for Summary Judgment.

On September 2, 2014, this Court reversed and remanded the District Court's denial of Defendant Griggs' Motion for Summary Judgment regarding Appellants' negligence claim, finding that "Griggs is entitled to official immunity on Appellants' state law claims." See Speight v. Griggs, 579 Fed. Appx. 757 (11th Cir. 2014). Following additional briefing regarding Appellants' Second Motion for Reconsideration, the District Court issued an order on December 17, 2014, terminating the action given that judgment had been entered in favor of Appellees regarding all of Appellants' claims. (Doc. 138). On December 17, 2014, Appellants filed their Notice of Appeal. (Doc. 139).

Ordinarily, this Court has jurisdiction over final decisions of the Northern District of Georgia pursuant to 28 U.S.C. §1291. Fulton County contends, however, that the Court lacks jurisdiction here because Appellants failed to cross-appeal the District Court's grant of summary judgment in favor of Fulton County in 2013 (Doc. 94) and, as such, Appellants have waived any right to appeal here. See Kessler v. National Enterprises, Inc., 203 F.3d 1058, 1059 (8th Cir. 2000); Northwestern Ind. Tel. Co. v. FCC, 872 F.2d 465 (D.C. Cir. 1989), cert. denied, 493 U.S. 1035 (1990); Jackson v. Humphrey, No. 14-10183, 2015 WL 151116, * 5 (11<sup>th</sup>Cir. Jan.13, 2015). Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1242 (11th Cir. 2003); citing Juidice v. Vail, 430 U.S. 327, 331, (1977)

## STATEMENT OF THE ISSUES

I.     Whether Appellants have waived their right to appeal, and thereby deprived this Court of jurisdiction, by failing to cross-appeal the District Court's 2013 denial of their Motion for Partial Summary Judgment, its partial grant of Griggs' Motion for Summary Judgment or its grant of Fulton County's Motion for Summary Judgment.

II.    Whether the District Court's grant of summary judgment as to Fulton County should be affirmed.

## STATEMENT OF THE CASE

I.     **Course of Proceedings and Dispositions in the District Court.**

On September 19, 2011, Appellants filed suit against Appellee Griggs, pursuant to 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution, for Griggs' accidental shooting of Appellants' then-minor son, D.M.C.  (Doc. 1, Plaintiffs' Complaint).  Appellants thereafter amended their Complaint several times[1] (see Docs. 22, 47, 66), including amendments adding Fulton County as a defendant and asserting a Section 1983 claim against the

_____

[1] Appellants' first amended their Complaint on January 18, 2012.  (See Doc. 22). On July 2, 2012, Appellants' amended their Complaint a second time to include a Monell v. Dept. of Social Services, 436 U.S. 658 (1978)  municipal liability claim against Fulton County.  (See Doc. 47).  Lastly, the Appellants' amended their Complaint a third time on December 24, 2012.  (See Doc. 66).

1

County for alleged violation of D.M.C.'s Fourth Amendment rights based on allegedly defective customs, policies and training by the County. (See Doc. 47, Plaintiffs' Second Amended Complaint at ¶¶ 1, 30B (July 2, 2012); Doc. 66, Plaintiffs' Third Amended Complaint at ¶¶ 1, 30B (Dec. 24, 2012)). As a result of Appellants adding Fulton County as a party to this suit, Fulton County filed a Motion to Dismiss the Second Amended Complaint for Failure to State a Claim on July 16, 2012. (See Doc. 48, 48-1). On December 21, 2012, the District Court denied Fulton County's Motion to Dismiss and directed Appellants to file a Third Amended Complaint in accordance therewith. (See Doc. 65). The Third Amended Complaint was filed on December 24, 2011. (See Doc. 66).[2]

On February 7, 2013 Fulton County filed its Motion for Summary Judgment seeking dismissal of Appellants' respective claims against it. (See Doc. 89). On February 8, 2013, Appellants filed their response to Fulton County's Motion for Summary Judgment. (See Doc. 90). Appellants' filed their Cross-Motion for Partial Summary Judgment against Appellee Griggs on January 9, 2013. (See Doc. 73).

On September 24, 2013, the District Court granted Appellees' respective Motions for Summary Judgment as to all claims, except Appellants' negligence

---

[2] Fulton County filed its original Motion for Summary Judgment on November 30, 2011; however, Fulton County inadvertently failed to redact deposition excerpts which reflected D.M.C.'s actual name. Fulton County's corrected Second Motion for Summary Judgment was filed on February 7, 2013. (See Doc. 89).

claim against Appellee Griggs.  (<u>See</u> Doc. 94, Order (Sept. 24, 2013)).  The District Court denied Appellants' Motion for Partial Summary Judgment regarding their Fourth Amendment and negligence claims against Griggs.  (Doc. 94).  On October 19, 2013, Appellee Griggs filed a Notice of Appeal, challenging the District Court's partial denial of his Motion for Summary Judgment.  (<u>See</u> Doc.105, Notice of Appeal (Oct. 19, 2013)).

At the time of Griggs' 2013 appeal, Appellants did not cross-appeal the District Court's denial of their Motion for Partial Summary Judgment, the Court's partial grant of Griggs' Motion for Summary Judgment or the Court's grant of Fulton County's Motion for Summary Judgment.

On September 2, 2014, this Court *per curiam* reversed and remanded the District Court's denial of Defendant Griggs' Motion for Summary Judgment regarding Appellants' negligence claim, finding that "Griggs is entitled to official immunity on Appellants' state law claims."  <u>See</u> <u>Speight v. Griggs</u>, 579 Fed. App'x. 757 (11th Cir. 2014).  On December 17, 2014, the District Court issued an order terminating the action given that judgment had been entered in favor of Appellees regarding all of Appellants' claims.  (<u>See</u> Doc. 138, Order (Dec. 17, 2014)).  On December 17, 2014, Appellants filed their Notice of Appeal.  (<u>See</u> Doc. 139, Notice of Appeal (Dec. 17, 2014)).

3

II.    **Statement of the Facts.**

On July 28, 2011, Jontavious Darden, D.M.C's friend, picked him up in a stolen Honda Accord from D.M.C.'s residence.    (Doc. 81, Deposition of Jontavious Darden at 9:19-20; Doc. 78, Deposition of Officer Michael Guin at 59: 2-3).    Darden was the driver of the Honda Accord and D.M.C. was the front seat passenger.  (Doc. 81, Darden Dep. at 12:17-19).   An unknown individual was a backseat passenger.  (Doc. 81, Darden Dep. at 12:14-15).  Darden, D.M.C., and the unknown backseat passenger travelled from Avondale Estates to Union City because they were bored and had nothing else to do, and decided to visit D.M.C.'s sister in Union City.  (Doc. 81, Darden Dep. at 13:20 – 14:7).

Darden observed a police officer and decided to park the stolen Honda Accord in a parking space at the Chevron gas station located at the 3800 block of Flat Shoals Road.  (Doc. 81, Darden Dep. at 14:8-25).  Once parked, Darden began panicking because he believed the police were coming after them.   (Doc. 81, Darden Dep., at 14:20-25).

Officer Guin of the Fulton County Police Department was conducting a business check of the Chevron station when he observed the Honda Accord occupied by D.M.C. and Darden.  (Doc. 78, Guin Dep. at 56:18-22).   Guin observed two individuals wearing white t-shirts occupying the vehicle.  (Doc. 78, Guin Dep. at 57:14-16).  The store clerk told Guin that a couple of hours earlier

4

there was an incident and Guin believed the two guys in the Honda Accord fitted the same clothing description.  (Doc. 78, Guin Dep. at 57:14-19).  The unknown back seat passenger was not inside of the vehicle.  (Doc. 78, Guin Dep. at 59: 21-22).

Guin drove out of the Chevron parking lot and turned his patrol vehicle around and came back to see if a loitering individual was still in the Chevron parking lot.  (Doc. 78, Guin Dep. at 61:22 – 62:3).  Guin pulled into the parking lot between the Honda Accord and the gas pumps and ran the tag on the Honda Accord from his patrol car computer.  (Doc. 78, Guin Dep. at 62:6-14).  The vehicle had been reported stolen.   (Doc. 78, Guin Dep. at 63:8-10).   Guin, believing that alleged felons were occupying the Honda, exited his vehicle with the intent to detain everybody present in the vehicle as part of his investigation of the stolen vehicle.  (Doc. 78, Guin Dep. at 67:5-7).

Guin exited his vehicle and approached the driver's side door with his gun drawn.  (Doc. 78, Guin Dep. at 74:11-15).  Guin announced, "police keep your hands where I can see them."  (Doc. 78, Guin Dep. at 79: 2-3).  Darden said to the officer "are you really going to put this on me?"  (Doc. 78, Guin Dep. at 79:6-7).  Guin opened the driver's side door; and, as Darden was exiting the vehicle, the vehicle began to roll back towards Guin's patrol vehicle.  (Doc. 78, Guin Dep. at

5

80: 22 – 81:6).  Guin reached inside of the vehicle to pull the emergency brake in the center console of the vehicle.  (Doc. 78, Guin Dep. at 81:11-16).

During that time, the passenger, D.M.C., exited the vehicle and fled the scene on foot, running towards the neighboring Motel 6 hotel.  (Doc. 78, Guin Dep. at 81:20-22).   After Guin pulled the emergency brake up, Darden was standing outside the vehicle, and Guin was able to handcuff Darden's right wrist. (Doc. 78, Guin Dep. at 82:11-13).  Darden began to physically resist, at which time Guin reached to key up his microphone to step up assisting officers' response. (Doc. 78, Guin Dep. at 82:21-23).   After a struggle between Darden and Guin, Darden swung and struck Guin with his right fist that had a handcuff on it.  (Doc. 78, Guin Dep. at 87:5-8).  Darden also took off running in the direction of the Motel 6 hotel.  (Doc. 78, Guin Dep. at 90:24-25).

Guin informed Communications of the location of the subject and provided a clothing description, location of travel, and decided not to continue the chase of Darden.  (Doc. 78, Guin Dep. at 91:11 – 92:2).  Approximately ten minutes later, and after several units had arrived, Griggs arrived on scene.  (Doc. 77, Deposition of Corporal Benjamin Griggs at 212:13 – 213:6).  Lt. Hayes stated over the radio that a perimeter needed to be set up around the Chevron and the Sheriff's K-9 unit had been called.  (Doc. 77, Griggs Dep. at 212:21-25).  Griggs exited his vehicle and spoke to Guin and showed Guin several suspected car thieves in the area.

6

(Doc. 77, Griggs Dep. at 213:8–18).  After Guin stated to Griggs that he did not recognize any of the known car thieves, Deputy Corey Henry of the Fulton County Sheriff's Office arrived with his K-9.  (Doc. 77, Griggs Dep. at 215:5-9).  Shortly thereafter, a discussion started about who was going to go into the woods with the K-9 and Henry.  (Doc. 77, Griggs Dep. at 216:1-2).  Griggs volunteered to go into the woods with Officer Henry and the K-9.  (Doc. 77, Griggs Dep. at 216:9). Detective Marty McHugh also volunteered to go into the woods with the K-9 handler to look for the suspects. (Doc. 77, Griggs Dep. at 217:20-25).

Griggs, McHugh, and Henry found a hole in the fence to enter into the wood line.  (Doc. 77, Griggs Dep. at 220:1-10).  Griggs allowed for Henry and the K-9 to enter through the hole in the fence, ahead of McHugh and himself. (Doc. 77, Griggs Dep. at 218:23-24).  Henry, the K-9 handler gave the K-9 the order to track once entry was made into the woodline.  (Doc. 79, Deposition of Corey Henry at 18:4-15).  The wood line in which Griggs, Henry, and McHugh were tracking was dark and Henry observed D.M.C.'s silhouette.  (Doc. 79, Henry Dep. at 20: 23 – 21: 8).  Henry heard D.M.C. say "okay, okay, I give and observed D.M.C. step out from behind a tree approximately 15 yards away from Henry.  (Doc. 79, Henry Dep. at 18:16-19).  Griggs told D.M.C. to "let me see your hands," at which time D.M.C. was slowly complying.  (Doc. 77, Griggs Dep. at 221:20-25).  Griggs ran over to D.M.C. and attempted to push kick D.M.C. to the ground.  (Doc. 79, Henry

7

Dep. at 18:21-24; Doc. 77, Griggs Dep. at 223:3-4).[3]  Griggs made contact with D.M.C. earlier than anticipated and thought to himself that he needed to get his gun up, at which time Griggs' gun accidentally discharged striking D.M.C. through the left side of his hand and the left side of the back of his head.  (Doc. 77, Griggs Dep. at 222:3-11; Doc. 89-8, Wilson Dep. at 14:3-5).

After D.M.C. was shot, Griggs used his police radio and stated "start a four, start a four," which means to dispatch an ambulance.  (Doc. 79, Henry Dep. at 41:19-23).  Lt. Hayes attended to D.M.C. while waiting for the ambulance and paramedics to arrive to take D.M.C. to Grady Memorial Hospital.  (Doc. 77, Griggs Dep. at 236: 5-19).  Griggs was immediately taken away from the scene.  (Doc. 77, Griggs Dep. at 236:10).

Griggs was aware of the Fulton County policy that under no circumstances is an officer to have his finger on the trigger unless he intends to use deadly force.  (Doc. 77, Griggs Dep. at 233:5-9).

---

[3]  The District Court noted that:
> The undisputed facts do not support Plaintiffs' version of the facts, even when viewed in their favor, that D.M.C. was unarmed, compliant and non-resistant at the time Officer Griggs pushed him to the ground with his foot – by employing a 'push-kick.'  Rather, the evidence indicates that D.M.C. was what officers refer to as "passively resistant" and had only started to go down on his knees, had only visibly put one hand above his head while appearing to conceal his other hand from the officers' view, and appeared to be considering whether to comply with the officers' commands or flee a second time.  Doc. 94, Order at 38 (Sept. 24, 2013).

## **Fulton County Police Department Policies and Procedures**

The policies, procedures and customs promulgated by the Fulton County Police Department were specifically designed to promote public welfare and safety by managing and training its police officers. (Doc. 88, Second Affidavit of Chief Gary Stiles, ¶ 3). It has been the policy of the Fulton County Police Department to provide its officers with a training program that includes certification of current skills, improving and updating of skills, development of new skills and awareness of new techniques that are consistent with state standards. (Doc. 88, Stiles Second Aff., ¶ 4). The Fulton County Police Department required all officers to complete a minimum of eleven (11) weeks of Georgia Peace Officer's Standard and Training Council ("P.O.S.T.") mandate training and to receive P.O.S.T. certification. (Doc. 88, Stiles Second Aff., ¶ 5). The mandate training courses included the following: Georgia criminal law and criminal procedure; peace officer liability; firearms; and use of force, which includes lessons as to restraint and how to use the appropriate level of force when conducting an arrest. (Doc. 88, Stiles Second Aff., ¶ 6).

The Fulton County Police Department required all officers to complete at least forty (40) hours of in-service training annually, twice the number of hours required to maintain P.O.S.T. certification. (Doc. 88, Stiles Second Aff., ¶ 7). Also, the Fulton County Police Department conducts Roll-Call Training at various precincts, which allows a regular method for updating the skills, knowledge and

abilities of sworn personnel between formal training sessions.  (Doc. 88, Stiles Second Aff., ¶ 8).

The Fulton County Police Department has been CALEA-accredited since 1997, which means the Department's officers are required to have ongoing, mandatory use of force training.  (Doc. 89-1, Deposition of Capt. Darryl Halbert at 5:15-24).   The Fulton County Police Department also follows up with officer training by conducting audits throughout the year.  (Doc. 88, Stiles Second Aff., ¶ 9).  The audits track officer training to determine what training they have had and what training they need. (Doc. 88, Stiles Second Aff., ¶ 9).

The Fulton County Police Department maintained and continues to maintain policies prohibiting the mistreatment of arrestees and detainees.  (Doc. 89-10, Stiles Aff., ¶ 3).  The policy of the Fulton County Police Department is to use deadly force against arrestees and detainees only if the officer reasonably believes his life is in danger or that he will suffer serious bodily injury. (Doc. 89-10, Stiles Aff., ¶ 3).  Fulton County has an expectation that its officers use force against citizens consistent with, and in compliance with department policy.  (Doc. 89-10, Stiles Aff., ¶ 6).

The Fulton County Police Department maintained and continues to maintain policies prohibiting officers from placing their fingers inside the trigger guard of their firearms unless they reasonably believe their life is in danger or that they will

10

suffer serious bodily injury. (Doc. 89-10, Stiles Aff., ¶ 4). The Fulton County Police Department maintained and continues to maintain policies prohibiting officers from going hands-on with arrestees/detainees while their firearms are drawn. (Doc. 89-10, Stiles Aff., ¶ 5). Fulton County Police Officers are trained to holster their weapons when they lay hands on a suspect to make an arrest. (Doc. 89-10, Stiles Aff., ¶ 5). Other than the instant case, the Fulton County Police Department has never had a death or serious bodily injury of an arrestee or detainee caused by an accidental or unintentional discharge by its officers. (Doc. 89-10, Stiles Aff., ¶ 7).

### Griggs' Training Regarding Firearms and the Use of Force

There are four categories of training Fulton County Police Department law enforcement officers receive. (Doc. 88, Stiles Second Aff., ¶ 10). Basic Training is mandated by the State of Georgia for certification of all Police Officers. (Doc. 88, Stiles Second Aff., ¶ 10). Career Development Training is specialized and advanced training designed to enhance skills, knowledge, abilities, and fostering career growth of the employee. (Doc. 88, Stiles Second Aff., ¶ 10). In-service Training is required by law and/or an officers job assignment in order to perform to a satisfactory level of competence. (Doc. 88, Stiles Second Aff., ¶ 10). Miscellaneous Training is that requested for a specified purpose or training that is

11

of interest to the general public safety community and is not included in the above-listed training.  (Doc. 88, Stiles Second Aff.,¶ 10).

**Griggs' Training**

The following is a list of classes and associated dates in which Griggs participated and completed training:

**2003:**
Basic Law Enforcement, Fulton County Public Safety Training Center
Firearms/Firearms Qualification/Use of Force          Feb. 3-7, 2003
Judgmental Pistol Shooting (Classroom)              Feb. 11, 2003
2003Defensive Tactics                          Feb. 24-28, 2003
Judgmental Pistol Shooting (Practical)              Mar. 18-19, 2003
In-service
Firearms Requalification                      Nov. 12, 2003

**2004:**
In-service
Firearms/Firearms Requalification/Use of Force        May 21-22, 2004
Firearms Requalification                      Oct. 27, 2004

**2005:**
In-service
Defensive Tactics Refresher                    Aug. 3, 2005
Firearms/Firearms Requalification/Use of Force        Aug. 5-6, 2005
Firearms Requalification                      Oct. 24, 2005

**2006:**
In-service
Firearms/Firearms Requalification/Use of Force        June 2-3, 2006
Firearms Requalification                      Nov. 8, 2006

**2007:**
In-service
Firearms/Firearms Requalification/Use of Force        Jun 29-30, 2007
Firearms Requalification                      Nov. 8, 2007

12

**2008:**
In-service
Defensive Tactics Refresher                                        June 25-28, 2008
Firearms/Firearms Requalification/Use of Force           June 25-28, 2008
Firearms Requalification                                          June 25-28, 2008

**2009:**
In-service
Firearms Requalification                                          Oct. 13, 2009
Judgmental Pistol Shooting Simulator                         Oct. 13, 2009
Use of Force                                                          Dec. 8, 2009

**2010:**
In-service
Firearms Requalification/Use of Force                         May 27, 2010
Firearms Requalification                                          Oct. 4, 2010
Judgmental Pistol Shooting Simulator                         Oct. 4, 2010

**2011:**
Combat Shooting Skills                                            Oct. 12, 2011
In-service
Firearms/Firearms Requalification/Use of Force           Mar. 24, 2011
Judgmental Pistol Shooting Simulator                         Mar. 24, 2011
Firearms                                                             April 21, 2011
Firearms                                                             April 27, 2011
Judgmental Pistol Shooting Simulator                         Sept. 2, 2011
Firearms Requalification                                          Dec. 29, 2011

(Doc. 88, Stiles Second Aff., ¶ 11).

### III.    **Standard of Review.**

The District Court's grant of summary judgment to Fulton County is subject

to *de novo* review.  See Cofield v. Goldkist, Inc., 267 F.3d 1264, 1267 (11th Cir.

2001).  This *de novo* review requires only that the Court apply the same legal

standard under Rule 56 of the Federal Rules of Civil Procedure regarding motions

13

for summary judgment.  See Sarfati v. Wood Holly Associates, 874 F.2d 1523, 1525 (11th Cir. 1989).

Rule 56 of the Federal Rules of Civil Procedure mandates "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any **material fact** [emphasis added], since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  As the movant, Fulton County is not required to negate its opponent's claim, but may discharge its burden merely by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."  Id. at 323, 325.  When the movant's burden is met, the non-moving party must then "go beyond the pleadings" and offer evidence designating "specific facts showing there is a genuine issue for trial."  Id. at 324.

The Court is not required to simply accept Plaintiffs' factual assertions, but should do so "only if there is a 'genuine' dispute to those facts."  Scott v. Harris, 550 U.S. 372, 380 (2007) (citation omitted).  Moreover, the Court may affirm the lower court's ruling "on any ground supported by the record," even if that ground

was not considered by the District Court.  American Gen'l Life Ins. v. Schoenthal Family, LLC, 555 F.3d 1331, 1343 (11th Cir. 2009).

## STATEMENT OF THE ARGUMENT

There is no dispute of material fact that creates a jury question in this matter. The District Court correctly granted summary judgment to Appellee Fulton County, thereby disposing of Appellants' claims. The Appellants have waived their right to appeal, and thereby deprived this Court of jurisdiction, by failing to cross-appeal the grant of Fulton County's Motion for Summary Judgment in 2013. Further, the District Court's Summary Judgment Order regarding Appellants' Fourth Amendment claim against Fulton County should be affirmed because Appellants cannot prove sufficient facts to establish a claim against Fulton County for defective customs, training, and policies as to the use of force by Griggs and the use of a firearm by Griggs.

## ARGUMENT AND CITATIONS OF AUTHORITY

**I.    This Court Lacks Subject Matter Jurisdiction Over Appellants' Appeal Because Appellants Failed to Cross-Appeal in the Prior Appeal and Therefore Waived their Right to Appeal.**

Because the cross-appeal rule "implicates this Court's subject matter jurisdiction, [it] accordingly must be addressed as a threshold matter" prior to the merits of its underlying claims.  (See Nat'l Parks Conservation Ass'n v. Norton,

324 F.3d 1229, 1242 (11th Cir.2003) (citing <u>Juidice v. Vail</u>, 430 U.S. 327, 331, (1977)).

"The general rule is that 'where an argument could have been raised on an initial appeal, it is inappropriate to consider that argument on a second appeal following remand.' " <u>Kessler v. National Enterprises, Inc.</u>, 203 F.3d 1058, 1059 (8th Cir. 2000) (quoting <u>Northwestern Indiana Tel. Co. v. FCC</u>, 872 F.2d 465 (D.C. Cir. 1989), <u>cert. denied</u>, 493 U.S. 1035 (1990)); <u>see also</u> <u>Jackson v. Humphrey</u>, No. 14-10183, 2015 WL 151116, * 5 (11th Cir. Jan. 13, 2015) (finding that the plaintiff's claims were "sufficiently intertwined" with the issue on appeal that she could have filed a cross-appeal); <u>Art Midwest, Inc. v. Atlantic Limited Partnership</u>, 742 F.3d 206, 211-13 (5th Cir. 2014)(discussing the "cross-appeal rule").  In <u>Jackson</u>, the Plaintiff failed to file a cross-appeal when the Department of Corrections Defendant filed their interlocutory appeal based upon the denial of qualified immunity.  <u>Jackson</u>, 2015 WL 151116 at * 1-4.  This Court reasoned:

> [P]laintifff…could be heard under our pendent appellate jurisdiction because "we 'may address [otherwise] nonappealable orders if they are inextricably intertwined with an appealable decision or if review of the former decision [is] necessary to ensure meaningful review of the latter.' " <u>Hudson v. Hall</u>, 231 F.3d 1289, 1294 (11th Cir.2000) (alterations in original) (citations omitted) (quoting <u>Summit Med. Assocs., P.C. v. Pryor</u>, 180 F.3d 1326, 1335 (11th Cir.1999)) (internal quotation marks omitted). Importantly, for a claim to fall within our pendent appellate jurisdiction, a party must file a cross-appeal of its own. <u>See</u>, e.g., <u>id.</u> at 1293–94; <u>McQueen v. Johnson</u>, 506 Fed.Appx. 909, 911, 913–14 (11th Cir.2013).

16

"This widely-accepted rule furthers the important value of procedural efficiency, . . . and prevents the 'bizarre result' that 'a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost.' " Northwestern Indiana Tel. Co., 872 F.2d at 470 (citations omitted).  Moreover, because the cross-appeal issue " 'implicates [the Court's] . . . subject matter jurisdiction, [it] accordingly must be addressed as a threshold matter' prior to the merits of its underlying claims." Jackson, 2015 WL 151116 at * 5 (quoting Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1242 (11th Cir. 2003)).

Here, although Appellants clearly could have cross-appealed, at the time of Appellee Griggs' appeal in 2013, they chose not to do so.  The issues taken up on the 2013 appeal are sufficiently intertwined with the current issues Appellants appeal.  The Appellants argued in their Response Motion for Summary Judgment that Griggs was performing a ministerial duty because the Fulton County Police Department had a policy and training that required Griggs not to place his finger inside the trigger guard unless he intended to use deadly force (See Doc. 94, p. 44; Stiles First Aff. ¶  4).  The crux of the District Courts ruling regarding whether Griggs was entitled to official immunity was whether the policies of the Fulton County Police Department created a ministerial or discretionary function.  Thus, the Appellants' municipal liability claims are sufficiently intertwined with this

17

issue, because these same "policies" or lack thereof, argued by the Appellants were the alleged moving force behind D.M.C.'s injuries.    Pursuant to <u>Jackson</u>, the County's *Monell* claim could have been heard under this Court's pendent appellate jurisdiction because "we 'may address [otherwise] nonappealable orders if they are inextricably intertwined with an appealable decision or if review of the former decision [is] necessary to ensure meaningful review of the latter.'" <u>Jackson</u>  No. 14-10183, 2015 WL 151116 at * 5.

As such, Appellants current appeal is waived because the Appellants failed to file their cross-appeal contemporaneously with Griggs within 30 days after the Trial Court's Order was filed on the docket.    Thus, this Court lacks subject matter jurisdiction as a result.  <u>See</u> <u>id.</u>

## II.    Appellants Cannot Establish a Claim Against Fulton County for Defective Customs, Training or Policies Regarding the Use of Force or the Use of Firearms.[4]

Despite Appellants acknowledging that Defendant Griggs "was trained to keep his finger off the trigger at all times unless he intended to shoot," Appellants' Brief at 23, Plaintiffs nonetheless contend that Fulton County is liable for defective training, customs and practices so as to warrant liability under 42 U.S.C. § 1983 and the Fourth Amendment of the U.S. Constitution.  A county may be held liable

---

[4] As will be discussed later in this section, Appellants are incorrect in seeking to remand this matter to address the Appellants' <u>Monell</u> claims against Fulton County.  This Court may address the merits of Appellants' <u>Monell</u> claims.

under 42 U.S.C. § 1983 liability *only* when its custom or official policy causes the constitutional violation at issue.  Monell v. Dep't of Soc. Servs. of NY, 436 U.S. 436 U.S. 658, 694-95; Grech v. Clayton Cnty., 335 F.3d 1326, 1329 (11th Cir. 2003)(en banc); Mcdowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004)(holding that for a governmental entity to be liable under §  1983, the Plaintiff must establish: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation").  To make this showing, Appellants must demonstrate that a deliberate and official policy of Fulton County was the moving force behind the alleged constitutional violations. See Monell, 436 U.S. at 691-95.

The United States Supreme Court in City of Canton v. Harris held:

[t]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to **deliberate indifference** to the rights of persons with whom the police come into contact… Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under §  1983.  City of Canton v. Harris, 489 U.S. 378, 388-389 (1989); Perez v. Miami-Dade County, 168 F. App'x 338, 340 (11th Cir. 2006).

To demonstrate deliberate indifference on the part of a municipality, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to

take any action." <u>Gold v. City of Miami</u>, 151 F.3d 1346,1350-51 (11th Cir. 1998) *citing* <u>Board of County Com'rs v. Brown</u>, 520 U.S. 397 (1997); <u>Young v. City of Augusta, Georgia</u>, 59 F.3d 1332, 1342-46 (11th Cir. 1994); <u>Church v. City of Huntsville</u>, 30 F.3d 1332, 1342-46 (11th Cir. 1994); <u>Wright v. Sheppard</u>, 919 F.2d 665, 674 (11th Cir. 1990); <u>Kerr v. City of West Palm Beach</u>, 857 F.2d 1546, 1556-57 (11th Cir. 1989)).  This Court has continuously held that without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise.  <u>Id.</u>

Further, the United States Supreme Court has held that although counties and other local government entities are "persons" within the scope of § 1983 and are subject to liability, Plaintiffs cannot rely upon the theory of ***respondeat superior*** to hold a county liable.  <u>See</u> <u>Monell</u> 436 U.S. at 692. "Congress did not intend [for] municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights." <u>Board of County Comm'rs v. Brown</u>, 520 U.S. 397, 415 (1997).  As such, Defendant Griggs' mere status as the County's employee is insufficient to establish the County's liability.

Even if Plaintiffs could show that D.M.C's constitutional rights were violated (and the County does not concede they were),[5] Appellants' claim against

---

[5]  Pursuant to F.R.A.P. 28(i), Fulton County adopts by reference Defendant Griggs' Appellee Brief to the extent it establishes no constitutional violation.

Fulton County would still fail because they cannot show that a County policy or custom caused the alleged deprivation.[6]  A policy is defined as "a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." <u>Sewell v. Town of Lake Hamilton</u>, 117 F.3d 488, 489 (11th Cir. 1997).  A custom "is a practice that is so settled and permanent that it takes on the force of law." <u>Perez</u> at 168 F. App'x at 340.  As such, in order for Appellants to establish § 1983 municipal liability on a policy or practice basis, they must first identify either: (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." <u>Grech v. Clayton County, Ga.</u>, 335 F.3d 1326, 1329 (11th Cir. 2003).  Here, Appellants simply cannot identify a County policy or custom that meets the required definition and that, moreover, resulted in D.M.C.'s injury.  The Appellants merely offer conjecture and innuendo which is insufficient to establish municipal liability pursuant to 42 U.S.C. § 1983.

Appellants contend that D.M.C.'s injury resulted from the County's alleged failure to train, or its inadequate or defective training of its police officers in the use of force and the use of firearms.  (<u>See</u> Doc. 66, ¶¶ 30A-30Z – Plaintiffs' Third

---

[6]  In the Appellants Brief, it is conceded that Griggs was "extensively" trained with regard to proper finger placement in order to avoid unintentional shootings. (Appellants' Brief, p. 30, Doc. 77, Griggs Dep. 115:21-116:14, 206:18-22, 233:6-13, Nable Dep. 75:13-76:6).

Amended Complaint).  As stated earlier, liability for failure to train or supervise extends to a municipality only if "the municipality inadequately trains or inadequately supervises its employees, this failure to train or supervise is a [municipal] policy, and that [municipal] policy causes the employees to violate a citizen's constitutional rights."  Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).  In fact, rarely will an allegation of failure to train or supervise be the basis for liability under section 1983.  See id.

It is well-settled that a governmental entity is not liable, as a matter of law, for a failure to train or supervise where there is no **notice** of a need.  Id. at 1351 (emphasis added); Wright v. Sheppard, 919 F.2d 665 (11th Cir. 1990). Additionally, where the claim is based on the defendant's failure to act or "deliberate indifference," a plaintiff must show "a background of events and circumstances" that demonstrates that the complained of policy, practice, or custom is tantamount to an affirmative decision by the municipality to violate the constitution.  City of Canton, 489 U.S. at 385.  "[I]t is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable."  Id.  This ensures that a county is held liable under §1983 only for those deprivations resulting from the deliberate legislative decisions and demonstrated practices of the municipality, and not from an isolated incident.  See McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004).

As discussed below, the record evidence does not demonstrate any relevant policy or custom that caused D.M.C.'s injury. Moreover, the record evidence does not support Appellants' contention that Fulton County was on notice of any need to better train police officers as to accidental discharges of their weapons. Additionally, there is a complete absence in the record indicating that Fulton County was aware of any alleged failures of policy resulting in D.M.C.'s injury.

**A. <u>No Failure To Train</u>:**

Appellants specifically contend that Fulton County failed to train its police officers on how to prevent accidental discharges. (Doc. 66, Plaintiffs' Third Amended Complaint ¶ 30B). In <u>Riley v. Newton</u>, 94 F. 3d 632, 638 (11th Cir. 1996) the Court held:

> …a section 1983 claim for inadequate training exists "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." <u>Canton</u>, 489 U.S. at 388, 109 S.Ct. at 1204. The failure to train must reflect a "deliberate" or "conscious" choice and the deficiency "must be closely related to the ultimate injury." <u>Id.</u> at 389, 391, 109 S.Ct. at 1205, 1206. Failure to train only becomes "deliberate" where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need." <u>Id.</u> at 390, 109 S.Ct. at 1205. <u>See</u> <u>also</u> <u>Belcher v. City of Foley, Alabama</u>, 30 F. 3d 1390, 1397-98 (11th Cir. 1994).[7]

---

[7] In order for Appellants to establish that Fulton County was "deliberately indifferent" so as to recover under a § 1983 claim for failure to train, they must show that Fulton County made a conscious choice to fail to train in the area of firearm safety and that this failure related to D.M.C.'s injury. <u>See</u> <u>Riley</u>, 94 F. 3d

Appellants apparently contend that the unintended discharge of Griggs' weapon and the subsequent injury to D.M.C. illustrates a lack of constitutionally adequate training by the County. (Doc. 66, Third Amended Complaint at ¶30B). But this Circuit's law does not contemplate liability on this basis. "[A]n allegation that the [municipality] did not train and supervise its officers with no specifics is not sufficient to establish that the police officers were acting under an official [municipal] policy." Reyes v. City of Miami Beach, No. 07-22680, 2008 WL 686958, at *13 (S.D.Fla. March 13, 2008); see also, Hall v. Smith, 170 Fed. Appx. 105, 108 (11th Cir. 2006) (affirming dismissal of § 1983 claim against a municipality where the plaintiff "alleged no factual support for his conclusory statement that the [municipality] had a policy or custom of grossly inadequate supervision and training of its employees"); Rosario v. Miami-Dade County, 490 F.Supp.2d 1213, 1225 (S.D. Fla. 2007) (dismissing § 1983 claim where plaintiff "failed to allege any facts" in support of her claim beyond her own incident). Nor can the opinion of Appellants' expert, Charles Key, without adequate factual basis, substitute as facts.[8]

---

at 632. The record is clear, however, that Fulton County has promulgated and fosters policies and customs to prevent accidental weapons discharges by its officers. (See Doc. 89-10, Affidavit of Chief Gary Stiles at ¶3-7).

[8] The question of the admissibility of expert testimony is not an issue of fact to be resolved against the moving party on a motion for summary judgment. General Elec. Co. v. Joiner, 522 U.S. 136, 143 (1997). Moreover, Key's opinions and

Municipal liability must be proven by something more than an allegation that on a single occasion, an officer did not properly apply his training.  See West v. Tillman, 496 F.3d 1321, 1330-1331 (11th Cir. 2007) (citing Pineda v. City of Houston, 291 F.3d 325, 333 (5th Cir. 2002)).  For this reason and others, rarely will an allegation of failure to train or supervise be the basis for liability under § 1983.  See Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).  And it is well settled that a governmental entity (and its officials) are not liable, as a matter of law, for a failure to train or supervise where there is no notice of a need. Id. at 1351; Wright v. Sheppard, 919 F.2d 665 (11th Cir. 1990).

The record evidence here also does not establish failure to act or "deliberate indifference" by the County; in other words, Appellants can cite to no "background of events and circumstances" that demonstrates that a complained of policy or custom is tantamount to an affirmative decision by the County to violate the Constitution. City of Canton, 489 U.S. at 394-95.

To the contrary, the record evidence is overwhelming that the Fulton County Police Department adequately trained its officers.  The following is a list of training classes, and associated dates, that Defendant Griggs attended and completed:

---

conclusions regarding County policies and practices, which are not supported by the undisputed facts present in the record, should not be given weight in the Court's analysis of liability.

25

**2003:**
Basic Law Enforcement, Fulton County Public Safety Training Center
| | |
|---|---|
| Firearms/Firearms Qualification/Use of Force | Feb. 3-7, 2003 |
| Judgmental Pistol Shooting (Classroom) | Feb. 11,  2003 2003 |
| 2003 Defensive Tactics | Feb. 24-28, 2003 |
| Judgmental Pistol Shooting (Practical) | Mar. 18-19, 2003 |
| In-service | |
| Firearms Requalification | Nov. 12, 2003 |

**2004:**
| | |
|---|---|
| In-service | |
| Firearms/Firearms Requalification/Use of Force | May 21-22, 2004 |
| Firearms Requalification | Oct. 27, 2004 |

**2005:**
| | |
|---|---|
| In-service | |
| Defensive Tactics Refresher | Aug. 3, 2005 |
| Firearms/Firearms Requalification/Use of Force | Aug. 5-6, 2005 |
| Firearms Requalification | Oct. 24, 2005 |

**2006:**
| | |
|---|---|
| In-service | |
| Firearms/Firearms Requalification/Use of Force | June 2-3, 2006 |
| Firearms Requalification | Nov. 8, 2006 |

**2007:**
| | |
|---|---|
| In-service | |
| Firearms/Firearms Requalification/Use of Force | June 29-30, 2007 |
| Firearms Requalification | Nov. 08, 2007 |

**2008:**
| | |
|---|---|
| In-service | |
| Defensive Tactics Refresher | June 25-28, 2008 |
| Firearms/Firearms Requalification/Use of Force | June 25-28, 2008 |
| Firearms Requalification | June 25-28, 2008 |

**2009:**
| | |
|---|---|
| In-service | |
| Firearms Requalification | Oct. 13, 2009 |

| | |
|---|---|
| Judgmental Pistol Shooting Simulator | Oct. 13, 2009 |
| Use of Force | Dec. 08, 2009 |

**2010:**

| | |
|---|---|
| In-service | |
| Firearms Requalification/Use of Force | May 27, 2010 |
| Firearms Requalification | Oct. 04, 2010 |
| Judgmental Pistol Shooting Simulator | Oct. 04, 2010 |

**2011:**

| | |
|---|---|
| Combat Shooting Skills | Oct. 12, 2011 |
| In-service | |
| Firearms/Firearms Requalification/Use of Force | Mar. 24, 2011 |
| Judgmental Pistol Shooting Simulator | Mar. 24, 2011 |
| Firearms | April 21, 2011 |
| Firearms | April 27, 2011 |
| Judgmental Pistol Shooting Simulator | Sep. 2, 2011 |
| Firearms Requalification | Dec. 29, 2011 |

(See Doc. 88, Stiles Second Aff., ¶ 11).

Appellee's expert Andrew J. Scott concluded in his expert report that the policies and procedures in place at the time of D.M.C.'s shooting regarding firearm safety were consistent with, and in many ways exceed, standard police practices and procedure. See Doc. 53-1 at 5-13, Scott's Expert Report. Specifically, Scott and Richard Nable, the Fulton County Police Department's firearm range master, noted that Fulton County adequately implemented procedures to prevent accidental discharge, including the following: 1) keeping the trigger finger outside of the trigger guard at all times unless the officer intends to use deadly force, 2) not to point a firearm directly at the suspect, unless the officer intends to use deadly force and 3) holstering the firearm before going "hands on" with a suspect. (Doc. 53-1;

27

see generally Doc. 82, Deposition of Lt. Richard Nable; at 117:1-22).  As a result, there is insufficient evidence to support a claim against Fulton County; therefore, the district court did not error in granting summary judgment as to Fulton County.[9]

**B. No Actionable Pattern or Practice:**

Appellants likewise have failed to establish that Fulton County was either aware, or reasonably should have been aware, of the existence of a pattern and practice of police officers accidentally shooting arrestees/detainees.  Indeed, the record is devoid of evidence tending to support the conclusion that Fulton County reasonably should have been on notice of such a pattern or practice.  To constitute sufficient notice, the past widespread abuses "must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences."  Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (emphasis added).  Indeed, prior to the

---

[9]   In its Order, the District Court granted the County's Motion for Summary Judgment because "Officer Griggs' actions did not amount to excessive force in violation of D.M.C.'s Fourth Amendment rights, [therefore,] Plaintiffs' claim against Fulton County cannot survive summary judgment."  Doc. 94, Order at 54 (Sept. 24, 2013).  This Court, however, need not rely solely on the District Court's rationale in affirming the lower court's judgment given that additional, alternate grounds also support the District Court's judgment in favor of the County.  See Baylor v. Jefferson County Bd. of Educ., 733 F.2d 1527, 1534 (11th Cir. 1984) ("It is well settled that a successful party in the district court may argue any grounds supported by the record for affirmance irregardless [sic] of whether the district court specifically recited those grounds in its decision."); American Gen'l Life Ins. v. Schoenthal Family, LLC, 555 F.3d 1331, 1343 (11th Cir. 2009) ("In its defense of a summary judgment, an appellee is entitled to raise alternative arguments that were rejected by the district court, because we may affirm on any ground supported by the record.").  (emphasis added).

incident involving D.M.C., the Fulton County Police Department had never had a death or serious bodily injury caused by an accidental or unintentional discharge by its officers.  (See Doc. 89-10, Stiles Aff. at ¶ 7).

Appellants also contend that the County had no system for tracking unintentional firearms discharges, thereby establishing the County's liability.  The Fulton County Police Department does, however, maintain a system for tracking all use of force incidents.  See Nable Dep. at 22:20 – 23:10.  The absence of a tracking system for unintentional discharges where a citizen is not injured is immaterial to this suit and is not constitutionally required.

As such, the record evidence fails to demonstrate that Fulton County was placed on notice or had knowledge of any alleged widespread flagrant abuses giving rise to D.M.C.'s accidental shooting.  Thus, Appellants cannot make the requisite showing.

### C. No Municipal Liability for Accidental Discharge:

Although Appellants argue otherwise, there is also no dispute in the record that Griggs' shooting of D.M.C. was accidental or unintentional.  (See Doc. 77, Griggs Dep. at 222:24 – 233:4).  As the District Court rightly noted:  "Despite Plaintiffs' argument that a jury could reasonably conclude that Griggs' discharge of the gun was intentional, they have presented no evidence that would demonstrate a triable issue as to Griggs' intent as is their burden on summary

29

judgment . . . Notably, Plaintiffs' failure to train claim against Fulton County is premised entirely on the fact that the shooting was accidental." (See Doc. 94, Order at 37, n.30.[10]  Indeed, Appellants themselves concede that their basis for seeking liability against the County is premised on an accidental, not an intentional act by Defendant Griggs. (See Brief of Appellants at 32 n. 14 (seeking liability based on alleged "policy and training deficiencies . . . for an accidental firearm discharge" and noting that Plaintiffs' expert "did not identify any defective policies or training causing intentional shootings, so if the shooting of D.M.C. were found to be intentional . . . only Griggs would be liable.").

The Eight Circuit in McCoy v. City of Monticello, 411 F. 3d 920 (8th Cir. 2005) held that a city is not liable for an accidental shooting under § 1983 on either

---

[10] In their Appellate Brief, Appellants largely fail to address the District Court's summary judgment ruling in favor of the County. According to Plaintiffs, "[i]t would be improper to address on appeal the merits of a claim that has not first been decided by the trial court, because 'a federal appellate court does not consider an issue not passed upon below.' " Brief of Appellants at 64 (quoting Singleton v. Wulff, 428 U.S. 106, 121 (1976)). Unlike here, however, Singleton involved a situation where the District Court never reached the merits of the case (ruling only on the issue of standing), but the Court of Appeals nonetheless ruled on the merits. See Singleton, 428 U.S. at 119-121. As such, the petitioner never "had an opportunity to be heard" on the merits. Id. at 121. That is simply not the case here. The District Court here considered the merits of Appellants' arguments with respect to both Appellees and concluded that the County was entitled to summary judgment. As such, this Court is free to consider Appellants' claim against the County and affirm the lower court's ruling "on any ground supported by the record." American Gen'l Life Ins., 555 F.3d at 1343.

an unconstitutional policy or custom theory, failure to train, or supervisory liability. The Court reasoned:

> A Fourth Amendment seizure requires an intentional act by an officer, and does not address "accidental effects of otherwise lawful government conduct." Brower v. County of Inyo, 489 U.S. 593, 596–97, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989). We previously held [the officers'] . . . act of drawing his gun was "objectively reasonable," and the accidental discharge did not constitute an unreasonable seizure violating McCoy's constitutional rights. McCoy I, 342 F.3d at 847–49. Therefore, the City cannot be held liable on either an unconstitutional policy or custom theory or on a failure to train or supervise theory.

McCoy, 411 F. 3d at 922.

Accordingly, the § 1983 claim against Fulton County is barred, and the lower court's grant of summary judgment should be affirmed.

## **CONCLUSION**

For the reasons stated above, the Defendant-Appellee Fulton County, Georgia respectfully requests that this Court AFFIRM the District Court's Order granting summary judgment in favor of Fulton County.

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

1. This brief complies with the type-volume limitation of F.R.A.P. 32(a)(7)(B) because:

   - this brief contains 9,244 words, excluding the parts of the brief exempted by F.R.A.P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of F.R.A.P. 32(a)(5) and the type style requirements of F.R.A.P. 32(a)(6) because:

   - this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point and Times New Roman font.

This 25th day of February, 2015.

*<u>/s/ Walter B. Yarbrough</u>*
Walter B. Yarbrough
Georgia Bar No. 780353
Walter.yarbrough@fultoncountyga.gov

OFFICE OF THE FULTON COUNTY ATTORNEY
141 Pryor Street, S.W.
Suite 4038
Atlanta, Georgia 30303
(404) 612-0246 (office)
(404) 730-6324 (facsimile)

<u>**CERTIFICATE OF SERVICE**</u>

I certify that I electronically filed the foregoing **BRIEF OF APPELLEE FULTON COUNTY, GEORGIA** with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on February 25, 2015. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system. Counsel also has been served a copy of Fulton County, Georgia's brief by certified U.S. Mail, addressed to:

Craig T. Jones
The Orlando Firm, P.C.
Decatur Court, Suite 400
315 West Ponce de Leon Avenue
Decatur, Georgia 30030
craig@orlandofirm.com

James E. Dearing, Jr.
James E. Dearing, Jr., P.C.
730 Peachtree Street, N.E., Suite 560
Atlanta, GA30308
jdearing@jed-law.com

This 25th day of February, 2015.

*/s/ Walter B. Yarbrough*
Walter B. Yarbrough
Georgia Bar No. 780353
walter.yarbrough@fultoncountyga.gov

OFFICE OF THE FULTON COUNTY ATTORNEY
141 Pryor Street, S.W.
Suite 4038
Atlanta, Georgia 30303
(404) 612-0246 (office)
(404) 730-6324 (facsimile)