IN THE COURT OF APPEALS

STATE OF GEORGIA

---

## APPEAL CASE NO.: 14-15629-F

---

TONY SPEIGHT, ET AL.

Appellants,

versus

BENJAMIN W. GRIGGS, ET AL.,

Appellees.

---

# APPELLEE BENJAMIN W. GRIGG'S BRIEF IN

# RESPONSE TO BRIEF OF APPELLANTS

---

JAMES E. DEARING, JR., ESQ.
Georgia Bar No. 215090
Attorney for Benjamin W. Griggs
Defendant/Appellee

Please send all communications to:

JAMES E. DEARING, JR., PC
730 Peachtree Street, NE, Suite 460
Atlanta, GA 30308

*Speight v. Griggs*
No. 14-15629-F

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26.1, the following is a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held company that owns 10% or more of the party's stock, and any other identifiable legal entities related to a party:

1.    Cunningham, Felice

2.    "D.M.C." (son of Tony Speight and Felice Cunningham)

3.    Dearing, Jr., James E.

4.    Fulton County, Georgia

5.    Griggs, Benjamin W.

6.    Jones, Craig T.

7.    The Orlando Firm, P.C.

C-2 of 2

*Speight v. Griggs*
No. 14-15629-F


8.      Rosenberg, Steven E.

9.      Speight, Tony

10.     Star Indemnity Company

11.     Totenberg, Hon. Amy

12.     Yarbrough, Walter B.


Respectfully submitted this 25th day of February, 2015

James E. Dearing, Jr.
GA Bar No. 215090

730 Peachtree Street NE, Suite 460
Atlanta, Georgia 30308
(404)870-0010
jdearing@jed-law.com

# TABLE OF CONTENTS

Certificate of Interested Parties and Corporate Disclosure Statement................2

Table of Contents ...................................................................4

Table of Authorities ...............................................................5

Table of Record References in the Brief.......................................8

Statement Regarding Oral Argument........................................10

Statement of Jurisdiction .......................................................10

Statement of the Issues .........................................................10

Statement of Case .................................................................11

      Nature of Case ................................................................11

      Course of Proceedings and Dispositions in the Court Below ................11

Statement of Facts ................................................................13

Summary of Argument ..........................................................23

Argument and Citations of Authority .......................................23

  A. The Trial Court Was Correct in Concluding that Appellants' Fourth

      Amendment Claim Against Griggs Must Be Reviewed to Determine If

      Griggs' Actions Were Reasonable.....................................23

Conclusion .........................................................................27

Certificate of Compliance ......................................................29

Certificate of Service ............................................................30

# TABLE OF AUTHORITIES

CASES

*Brower v. County of Inyo,*
    489 U.S. 593, 595 (1989) ……………………………………………….24

*Crenshaw v. Lister,*
    556 F. 3d 1283, 1290 (11th Cir. 2009)………………………………….…..24

*Eubanks v. Gerwen,*
    40 F. 3d 1157, 1160 (11th Cir. 1994)…………………………………….25

*Graham v. Connor,*
    490 U.S. 386, 394-95 (1989)………………………………………..24, 26, 27

*Jackson v. Sauls,*
    206 F. 3d 1156 (11th Cir. 2000)…………………………………………….26

*Kesinger ex rel. Estate of Kesinger v. Herrington,*
    381 F. 3d 1243, 1248 (11th Cir. 2004)………………………….......24

*Lee v. Ferraro,*
    284 F. 3d 1188, 1197 (11th Cir. 2002)…………………………….......24

*Long v. Slaton,*
    508 F. 3d 576, 580 (11th Cir. 2007)………………………………….…..25

*McCullough v. Antolini,*
    559 F. 3d 1201, 1205-06 (11th Cir. 2009)…………………………….…..24

*Mercado v. City of Orlando,*
    407 F. 3d 1152, 1156-57 (11th Cir. 2005)……………………………....24

*Moore v. Gwinnett County,*
    967 F. 2d 1495, 1497 (11th Cir. 1992)…………………………….......25

*Monell v. Dept. of Social Services,*
    436 U.S. 658 (1978) …………………………………………………….11

*Montonte v. Carr,*
    114 F. 3d 184 (11th Cir. 1997)...................................................25

*Pleasant v. Zemieski,*
    895 F. 2d 272 (6th Cir. 1990)....................................................27

*Post v. City of Fort Lauderdale,*
    7 F. 3d 1552, 1559 (11th Cir. 1993).............................................25

*Rodriguez v. Farrell,*
    280 F. 3d 1341, 1351 (11th Cir. 2002)..........................................24

*Speight v. Griggs,*
    No. 13-14857 (11th Cir. 9/2/14) .................................................12

*Tennessee v. Garner,*
    471 U.S. 1(1985) ...........................................................24, 26, 27

*Terry v. Ohio,*
    392 U.S. 1 (1968)...................................................................24

*Vinyard v. Wilson,*
    311F. 3d 1340, 1347 (11th Cir. 2002)...........................................25

*Willingham v. Loughnan,*
    261 F. 3d 1178, 1188 (11th Cir. 2001)..........................................25

## STATUTES AND CONSTITUTIONAL PROVISIONS

The Fourth Amendment ....................................................................24

28 U.S.C. § 1291............................................................................10

28 U.S.C. § 1331 ...........................................................................10

28 U.S.C. § 1367 ...........................................................................12

28 U.S.C. § 1983 ...........................................................................11

## TABLE OF RECORD REFERENCES IN THE BRIEF

| Brief Page # | Description | Docket# |
|---|---|---|
| 11 | Complaint | 1 |
| 11 | Answer to Complaint | 3 |
| 11 | Stipulation of Defendant Corporal Benjamin W. Griggs | 21 |
| 11 | Amended Complaint | 22 |
| 11 | Answer to Amended Complaint | 23 |
| 11 | Motion to Amended Complaint | 38 |
| 11 | Order Granting Motion to Amend Complaint | 46 |
| 11 | Second Amended Complaint | 47 |
| 12 | Motion to Dismiss for Failure to State a Claim | 48 |
| 12 | First Motion for Summary Judgment by Benjamin W. Griggs | 59 |
| 12 | Fulton County's Motion for Summary Judgment | 60 |
| 12 | Order Denying Motion to Dismiss for Failure to State a Claim | 65 |
| 12 | Third Amended Complaint | 66 |
| 12 | Answer of Fulton County, Georgia to Third Amended Complaint | 70 |
| 12 | Answer of Benjamin W. Griggs to Third Amended Complaint | 71 |
| 12 | Cross Motion for Partial Summary Judgment | 73 |

Against Defendant Griggs

| 12 | Response to Statement of Material Facts | 74 |

| 12 | Response in Opposition to First Motion for Summary Judgment | 75 |

| 12 | First Motion to Seal Fulton County's Motion for Summary Judgment | 84 |

| 12 | Second Motion for Summary Judgment | 89 |

| 12 | Response in Opposition to Second Motion for Summary Judgment | 90 |

| 12, 13 | Order Granting in Part and Denying in Part Motion for Summary Judgment | 94 |

| 12 | Notice of Appeal by Benjamin W. Griggs | 105 |

| 13 | Certified Copy of Judgment of USCA Vacating, Reversing and Remanding Decision of the District Court | 135 |

| 13 | Order Making the USCA Mandate Judgment of this Court | 137 |

| 13 | Order Closing Civil Action | 138 |

## STATEMENT REGARDING ORAL ARGUMENT

Appellee Benjamin W. Griggs does not request oral argument.  The District Court's Order of September 24, 2013 is clear as to the dismissal of Plaintiffs' federal claim and this Court has already addressed and dismissed Plaintiffs' pendent state law tort claims.   Oral argument will not aid this Court in any important way.

## STATEMENT OF JURISDICTION

**A.      Basis for District Court's Subject Matter Jurisdiction.**

The District Court had subject matter jurisdiction over the instant case pursuant to 28 U.S.C. § 1331.

**B.      Basis for Appellate Court's Subject Matter Jurisdiction.**

This is a direct appeal from a final judgment of the District Court, for which this Court has subject matter jurisdiction under 28 U.S.C. §1291.

## STATEMENT OF THE ISSUES

1.      Whether a police officer who is part of a potentially deadly pursuit can liable for a seizure under the Fourth Amendment if there is an accidental shooting?

2.      Whether the officer's conduct prior to the accidental shooting bears any weight in the Court's determination whether there is liability under Fourth Amendment?

## STATEMENT OF THE CASE

### Nature of Case

This is a 42 U.S.C. § 1983 action alleging that a police officer used excessive force against Plaintiffs' teenage son in violation of the Fourth Amendment and shot him without justification. The case is here on appeal from a grant summary judgment to Appellee Griggs on Plaintiffs' federal claims.

### Course of Proceedings and Disposition in the Court Below

Appellee stipulates to Appellants' general description of the course of proceedings below. On September 19, 2011, Plaintiffs Tony Speight and Felice Cunningham filed a complaint against Officer Benjamin Griggs under 42 U.S.C. § 1983 for shooting their son in violation of the Fourth Amendment, with pendent state claims for battery and negligence. (R. 1). Officer Griggs filed an Answer on October 11, 2011. (R. 3). By written stipulation of the parties, Plaintiffs filed an Amended Complaint on January 18, 2012, and Griggs filed his Answer on January 25, 2012. (R. 21, 22, 23).

On May 18, 2012, Plaintiffs filed a Motion to Amend the Complaint to Add Fulton County as a defendant and to assert a Section 1983 claim against the county under Monell v. Dept. of Social Services, 436 U.S. 658 (1978). (R. 38). The district court entered an order granting the Motion to Amend on July 2, 2012, and the Second Amended Complaint was deemed filed on that date. (R. 46, 47).

Defendant Fulton County then filed a Motion to Dismiss the Second Amended Complaint for failure to state a claim on July 16, 2012. (R. 48). On December 21, 2012, the trial court entered an order denying Fulton County's motion to dismiss and directing Plaintiffs to file a Third Amended Complaint in accordance therewith. (R.65). The third amended complaint was filed on December 24, 2011, and both Defendants filed Answers on January 4, 2012. (R. 66, 70, 71).

Meanwhile, Defendants had filed motions for summary judgment on November 30, 2011, and Fulton County filed a corrected summary judgment motion on February 7, 2013. (R. 59, 60, 84, 89). Plaintiffs filed timely responses to both Defendants' motions, as well as their own cross-motion for partial summary judgment against Griggs only, on January 9, 2013 and February 8, 2013. (R. 73, 74, 75, 90). On September 24, 2013, the trial court entered an order granting Defendants' motions for summary judgment on all claims except for the state negligence claim against Griggs, denying Plaintiffs' cross motion for summary judgment, and retaining supplemental jurisdiction under 28 U.S.C. §1367 for trial of the negligence claim. (R. 94). Defendant Griggs filed notice of appeal on October 19, 2013. (R. 105).

On September 2, 2014, this Court issued an unpublished *per curiam* decision reversing the trial court's order on the state law negligence claim. <u>Speight v. Griggs</u>, No. 13-14857 (11th Cir. 9/2/14). Plaintiffs filed a petition for rehearing or

hearing *en banc* on September 15, 2014, which was denied on December 16, 2014, and the case was remanded to the trial court. (R. 135). The trial court entered an Order terminating the action on December 17, 2014. (R. 94, 137, 138).

## STATEMENT OF FACTS

On the evening of July 28, 2011, D.M.C. went joyriding with a friend, Jontavious Darden, in a stolen vehicle given to Darden by a junkie from their neighborhood. (Fulton County SMF ¶ 1; Pls.' Resp. SMF ¶ 1; Darden Dep. 12:20-13:19, 39:18-40:3, 41:9-20, 52:10-13). Darden drove the vehicle, a Honda Accord, while D.M.C. rode in the front passenger seat. (Fulton County SMF ¶ 2; Pls.' Resp. SMF ¶ 2; Darden Dep. 12:16-19, 16:3-8). Darden and D.M.C. drove from Avondale Estates to Union City because they were bored and there was nothing else to do and decided to go see "Faye" whom D.M.C. referred to as his sister. (Fulton County SMF ¶ 4; Pls.' Resp. SMF ¶ 4; 13:20-14:7, 42:12-25). At some point in the evening after visiting Faye's house, Darden noticed a police officer patrolling the area, panicked, and pulled into a Chevron gas station located on Flat Shoals Road. (Fulton County SMF ¶ 5; Pls.' Resp. SMF ¶ 5; Darden Dep. 10:1). Fulton County Police Officer Michael Guin was conducting a "business check" of the Chevron station when he observed Darden and D.M.C. in the Honda Accord and noticed that they matched the description of two individuals involved in a possible incident reported earlier at the Chevron. (Guin Dep. 56:18-57:19, 62:21-

63:3). Officer Guin parked behind the Honda Accord and ran the tag from the computer in his patrol car. (Guin Dep. 58:12-59:3, 62:9-12). The vehicle had been reported stolen two months earlier. (Pls.' Add'l SMF ¶ 2; Fulton County's Resp. to Pls.' Add'l SMF ¶ 2; Guin Dep. Ex. 1, at 2). Officer Guin notified "communications" of his location and that he had an occupied stolen vehicle. (Guin Dep. 66:10-14; Guin Dep. Ex. 1, at 2).

Officer Guin approached the driver's side door of the Honda Accord "in a felony stop manner" with his gun drawn in a low, ready position. (Fulton County SMF ¶¶ 14-15; Pls.' Resp. SMF ¶¶ 14-15; Guin Dep. 63:4-10, 67:5-7, 74:13-75:25; Guin Dep. Ex. 1, at 2). Officer Guin then issued a verbal command to the occupants to keep their hands visible. (Fulton County SMF ¶ 16; Pls.' Resp. SMF ¶ 16; Guin Dep. 77:12-19; Guin Dep. Ex. 1, at 2). When Officer Guin opened the driver's side door, Darden took his foot off the brake to exit the vehicle and it began to roll backwards toward Guin's patrol car. (Fulton County SMF ¶ 18; Pls.' Resp. SMF ¶ 18; Guin Dep. 80:23-81:11; Guin Dep. Ex. 1, at 2). To stop the vehicle, Officer Guin reached in behind Darden and pulled the emergency brake located in between the front driver's seat and passenger seat. (Fulton County SMF ¶ 19; Pls.' Resp. SMF ¶ 19; Guin Dep. 81:11-17; Guin Dep. Ex. 1, at 2). During this commotion, D.M.C., who was in the front passenger seat, took the opportunity to exit the vehicle and flee the scene on foot, running in the direction of an adjacent

14

Motel 6. (Fulton County SMF ¶ 20; Pls.' Resp. SMF ¶ 20; Guin Dep. 81:18-25).

Darden made no attempt to pursue D.M.C. and instead focused his efforts on

detaining Darden. (Pls.' Add'l SMF ¶ 4; Fulton County's Resp. to Pls.' Add'l SMF

¶ 4; Guin Dep. 83:15-84:17).

Officer Guin holstered his gun, pulled Darden out of the vehicle, and placed

one handcuff on Darden's right wrist. (Fulton County SMF ¶ 21; Pls.' Resp. SMF

¶ 21; Guin Dep. 82:1-13, 88:20-89:3; Guin Dep. Ex. 1, at 2). Darden refused to

comply with Officer Guin's request that he place his left hand behind his back and

actively resisted Officer Guin's attempt to place the handcuff on his left wrist.

(Guin Dep. 82:11-83:14, 84:17-86:3, 86:20-88:17; Guin Dep. Ex. 1, at 2-3).

Officer Guin keyed up his shoulder microphone to request that dispatch order

responding units to step up their response. (Guin Dep. 82:21-83:14). During the

struggle, Darden was able to turn his body toward Guin and a "push-and-shove"

match" ensued. (Guin Dep. 84:20-24; Guin Dep. Ex. 1, at 3).

In order to regain control, Officer Guin drew his ASP expandable baton and

struck Darden once in the upper right forearm and once on the lower calf region.

(Guin Dep. 84:24-86:25; Guin Dep. Ex. 1, at 3). Officer Guin was unable to deliver

strong blows with the baton because of his close proximity to Darden and the

vehicle, and Darden broke free of Officer's Guin's grasp. (Guin Dep. 85:7-87:22;

Guin Dep. Ex. 1, at 3). Darden lunged toward Officer Guin, briefly reached for the

baton, and then swung at Officer Guin with his right arm and the handcuff brushed Officer Guin across the face. (Guin Dep. 86:25-90:7; Guin Dep. Ex. 1, at 3). At that point, Officer Guin drew his gun and Darden took off running in the direction of the Motel 6. (Guin Dep. 88:16-90:25; Guin Dep. Ex. 1, at 3). Guin gave a brief chase after Darden, radioed dispatch to provide the location of the subject and a clothing description, and decided to wait for the responding officers to arrive and set up a perimeter. (Guin Dep. 91:10-92:3). Several officers who heard Officer Guin's radio call for backup during the struggle with Darden began arriving on the scene, including Defendant Griggs and Detective Marty McHugh. (Guin Dep. 113:12-22; McHugh Dep. 11:4-12:25; Griggs Dep. 208:10-210:25, 212:2-213:18). At approximately 12:40 a.m., Officer Corey Henry of the K-9 Unit of the Fulton County Sheriff's Department also responded with a search dog, "Marco." (Guin Dep. Ex. 1, at 3; Henry Dep. 9:4-13:9, 17:14-19:16, 45:8-10). Officer Guin provided a description of the suspect and informed the officers what had happened, including that the driver of the stolen vehicle had assaulted him before fleeing the scene on foot.

The officers followed the K-9 "Marco" into the woodline as he tracked the scent of the suspect through a fence separating the Chevron and the Motel 6. (Guin Dep. 113:12-25; McHenry Dep. 11:25-12:25; Henry Dep. 9:4-13:9, 17:14-19:16, 12:25-13:5, 17:20-23; Griggs Dep. 138:11-13; Griggs Dep. Ex. 2, at 2). Defendant

16

Griggs and Detective McHugh volunteered to search the woods for the suspect with Officer Henry and the K-9 "Marco." (Fulton County SMF ¶¶ 31-32; Pls.' Resp. SMF ¶¶ 31-32; Griggs Dep. 215:25-216:12; Griggs Dep. Ex. 2, at 3).

(Griggs Dep. 218:11-219:4; Griggs Dep. Ex. 2, at 3; McHugh Dep. 18:10-16). Defendant Griggs followed Officer Henry and the K-9 to the left toward some abandoned houses or structures behind the motel, and Detective McHugh fanned out in the opposite direction. (McHugh Dep. 20:12-24:20; Griggs Dep. 218:11-220:20).

The search area behind the Motel 6 was thickly wooded and dark requiring the officers to use flashlights and night vision units for visibility. (Griggs Dep. 124:8-24, 134:7-135:12, 136:2-4, 216:13-24; Griggs Dep. Ex. 2, at 3; Henry Dep. 9:20-10:5, 20:18-21:1, 23:1-24, 45:1-46:8; McHugh Dep. 35:1-19, 52:5-18). Shortly after crossing the fence line, Detective McHugh and Defendant Griggs heard the dog begin to bark and Officer Henry yell commands to someone to "get down" and "let me see your hands." (McHugh Dep. 24:22-26:16; McHugh Dep. Ex. 1, at 1; McHugh Dep. Ex. 2, at 1; Griggs Dep. 221-13; Griggs Dep. Ex. 2, at 4). At that point, Defendant Griggs was unable to see the individual subject because his view was obstructed by a large tree. (Griggs Dep. 221:6-13; Griggs Dep. Ex. 2, at 4). Officer Henry heard the suspect say, "Okay, okay, I give" as he began to step out from behind the tree. (Henry Dep. 18:16-18; Henry Dep. Ex. 3, at

17

1). He could only see the suspect's silhouette because it was dark. (Henry Dep. 20:21-21:5). Officer Henry stopped Marco from charging the suspect and maintained a distance of approximately 15 yards from the suspect after which he observed the suspect step out from behind a tree and start to get down on his knees. (Henry Dep. 18:16-22; Henry Dep. Ex. 3, at 1). Defendant Griggs rushed over toward Officer Henry and the K-9, and as he came around the tree he also observed a black male – now known to be D.M.C. – step out from behind a tree and start to slowly go down on one knee with his hands out in front of him. (Griggs Dep. 221:14-25; Griggs Dep. Ex. 2, at 4). Because it was dark, Defendant Griggs illuminated the suspect with the tactical light on his gun and began issuing verbal commands to "get on the ground." (Griggs Dep. 124:8-25, 221:20-25). At that time, he could only see the suspect's left hand but not his right hand. (Griggs Dep. 132:22-133:2, 221:22-23). Defendant Griggs instructed Officer Henry that he was going to "go hands on" and needed a light because he was turning off the tactical light and holstering his gun to handcuff the suspect. (Griggs Dep. 133:8-14, 222:5-223:12, 228:5-17; Griggs Dep. Ex. 2, at 4). Defendant Griggs testified that it was his plan to put the gun up, kneel on the suspect, and then handcuff him. (Griggs Dep. 135:15-28, 223:11-12, 228:13-229:24).    "Going hands on" means that the officer is going to place handcuffs on the suspect. (Griggs Dep. 133:22-23).

According to Defendant Griggs, because the suspect "was not getting on the ground," had only "gone to one knee," and was acting "like he was unsure of what he was going to do," Defendant Griggs – in one continuous motion – moved in and push-kicked the suspect with his right leg, knocking him to the ground.  (Griggs Dep. 133:2-14, 137:17-138:3, 221:22-223:25; Griggs Dep. Ex. 2, at 4).  When he performed the "push-kick," Defendant Griggs was holding the gun with the tactical light in operation. (Griggs Dep. 222:3-223:25, 227:12-229:24; Griggs Dep. Ex. 2, at 4-5).  Defendant Griggs testified that a "push-kick" is "just a push-kick forward. I didn't rear back and kick him. I just pushed him over with my foot." (Griggs Dep. 180:6-24).  After seeing which direction the suspect had fallen, Defendant Griggs took his hand off the gun as he moved in toward the suspect, causing the tactical light to go out. (Griggs Dep. 132:2-10, 135:12-14, 228:18-229:17; Griggs Dep. Ex. 2 at 4-5). Defendant Griggs remembers that he encountered the suspect sooner than he anticipated and still had the gun out. (Griggs Dep. 135:15-136:7, 222:6-9, 223:13-25; Griggs Dep. Ex. 2, at 4-5). Through the course of trying to holster his gun, preparing to kneel down on the suspect, and pulling out his handcuffs, Defendant Griggs' gun went off, shooting D.M.C. through one of his hands and in the back of the head. (Griggs Dep. 136:2-137:10, 222:3-224:3, 231:13-232:1, 241:3-241:22; Griggs Dep. Ex. 2, at 4-5). Griggs heard the shot, but did not see what had happened. (Griggs Dep. 229:8-18, 241:19-22; Griggs Dep. Ex. 2, at 5).

Griggs testified that after hearing the shot, he turned his light back on and shined it in the direction of the suspect and saw that D.M.C. had sustained an injury to his head. (Griggs Dep. 241:3-241:22; Griggs Dep. Ex. 2, at 5). At that point, Griggs said "Oh, God I shot him. I AD'd," and got on his radio to request an ambulance and emergency EMS personnel. (Griggs Dep. 231:4-12; Griggs Dep. Ex. 2, at 5). "AD" is the term officers use to refer to an accidental discharge. (Griggs Dep. 30:1-16). (Griggs Dep. 117:14-118:6, 122:17-123:10, 125:3-8, 206:18-22). He then knelt down beside D.M.C., checked for a pulse and started talking to him saying "please hang in there, I'm sorry, I'm so sorry, please hang in, stay with me."

Defendant Griggs was trained as an officer to index the weapon, i.e., meaning that an officer does not put his finger on the trigger or inside the trigger housing/guard of the gun unless the officer intends to shoot. (Griggs Dep. 115:21-23, 121:3-16, 206:25-207:6). In terms of whether he violated any training protocols on the night of the incident, Griggs testified that "obviously [his] finger wasn't indexed" as his training required, because his finger must have been on the trigger when the gun discharged. (Griggs Dep. 233:14-25). Griggs testified that he was distraught over the incident, that the gun accidentally discharged, and that he did not intend to shoot D.M.C. (Griggs Dep. 17:3-14, 122:17-123:10, 125:3-8, 231:4-12, 233:14-25, 207:4-208:5, 264:3-21).

Griggs further testified that his actions in having his gun drawn during the search and in "taking [D.M.C] down" were not unreasonable under the circumstances because he had been informed that the suspect he was looking for had assaulted another police officer before fleeing the scene and that D.M.C. was not fully and promptly complying with their commands to get down on the ground. (Griggs Dep. 86:8-13, 207:19-208:4, 216:25-217:7). He testified, however, that it was not a "deadly-force situation," there was no reason to shoot D.M.C., and that he did not intend to shoot him. (Griggs Dep. 133:24-134:6, 207:4-208:5). Defendant Griggs further testified that D.M.C. was not immediately complying with the officers' numerous commands to get on the ground, but that he was not actively resisting arrest. (Griggs Dep. 262:21-263:15).

Following the incident, Defendant Griggs was placed on paid administrative leave for a period of time and was temporarily restricted from participating in SWAT call-outs. (Griggs Dep. 18:118). Defendant Griggs went before the Fulton County Response to Resistance Review Board as a result of the accidental discharge of his gun. (Griggs Dep. 102:14-103:19). The Review Board recommended that Defendant Griggs receive additional firearm training. (Griggs Dep. 104:13-19). Defendant Griggs received additional training in September 2011 on the use of force in low lighting situations, preventing unintentional/accidental discharges, and the use of flashlights and tactical gun-mounted lights. (Griggs Dep.

104:23-116:25, 119:20-121:7, 121:24-127:9, 128:18-131:20; Nable Dep. 35:3-14, 61:20-63:1, 96:10-22). Prior to this incident, Defendant Griggs had not received specific training in the context of preventing accidental or unintentional discharges during the course of an arrest. (Griggs Dep. 126:25-127:5, 128:20-129:23). His previous training was geared toward judgmental/intentional shooting. (Griggs Dep. 127:6-9, 129:16-17).

The Fulton County Police Department requires all officers to complete a minimum of eleven (11) weeks of Georgia Peace Officer's Standard and Training Council ("P.O.S.T.") mandate training and to receive P.O.S.T. certification. (Fulton County SMF ¶ 48; Pls.' Resp. SMF ¶ 48; Stiles 2nd Aff. ¶ 5). Fulton County Police Officers receive mandated training on peace officer liability, firearms, and use of force, which includes lessons as to restraint and how to use the appropriate level of force when conducting an arrest. (Fulton County SMF ¶ 49; Pls.' Resp. SMF ¶ 49; Stiles 2nd Aff. ¶ 6). The Fulton County Police Department also requires all officers to complete at least forty (40) hours of in-service training annually, twice the number of hours required to maintain P.O.S.T. certification, and conducts Roll-Call Training at various precincts, which provides a regular method for updating the skills, knowledge and abilities of sworn personnel between formal training sessions. (Fulton County SMF ¶¶ 50-51; Pls.' Resp. SMF ¶¶ 50-51; Stiles 2nd Aff. ¶¶ 7-8). The Fulton County Police Department conducts

training audits throughout the year to track officer training to determine whether additional training is required. (Fulton County SMF ¶¶ 53-54; Pls.' Resp. SMF ¶¶ 53-54; Stiles 2nd Aff. ¶ 9). In addition to training officers to index their weapon, the Fulton County Police Department trains its officers to avoid going "hands-on" with arrestees/detainees while their firearms are drawn. (Fulton County SMF ¶¶ 58-59; Stiles 1st Aff. ¶¶ 4-5). Officers are trained to holster their weapons when they lay hands on a suspect to make an arrest. (Fulton County SMF ¶ 60; Stiles 1st Aff. ¶ 5).

## SUMMARY OF ARGUMENT

Appellee contends that he is entitled to Qualified Immunity and that no Fourth Amendment violation can be successfully asserted against him. Appellee contends that: (1) the shooting of D.M.C. was accidental – meaning Appellee formed no intent to harm D.M.C.; and (2) Appellee's actions/conduct prior to the shooting was reasonable and lawful in light of the circumstances.

## ARGUMENT AND CITATIONS OF AUTHORITY

**A.    The Trial Court Was Correct in Concluding that Appellants' Fourth Amendment Claim Against Griggs Must Be Reviewed to Determine If Griggs' Actions Were Reasonable.**

### 1. *Excessive Force and the Fourth Amendment*

Although this case deals with very tragic and unfortunate facts, the analysis that this Court should use is simple and straightforward. In doing so, it is clear that

Griggs is entitled to Qualified Immunity. His actions, based upon the situation facing him, protect him from liability. Under the Fourth Amendment, a seizure occurs when an officer exerts intentional or willful control "by means of physical force or show of authority" to restrain the liberty of a citizen. Brower v. County of Inyo, 489 U.S. 593, 595, 595 (1989); Terry v. Ohio, 392 U.S. 1 (1968). The District Court was correct when it concluded that the Fourth Amendment's freedom from unreasonable searches and seizures encompasses the right to be free from the use of excessive force in the course of an arrest, or other "seizure." *See* Graham v. Connor, 490 U.S. 386, 394-95 (1989); Mercado v. City of Orlando, 407 F. 3d 1152, 1156-57 (11th Cir. 2005); Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1248 (11th Cir. 2004); Rodriquez v. Farrell, 280 F. 3d 1341, 1351 (11th Cir. 2002) (the unreasonable use of excessive force in carrying out an arrest constitutes a violation of the Fourth Amendment). The District Court went on to state that a claim of excessive force is analyzed through the lens of the Fourth Amendment's "objective reasonableness" standard. *Graham*, 490 U.S. at 395-96 (citing Tennessee v. Garner, 471 U.S. 1(1985); McCullough v. Antolini, 559 F.3d 1201, 1205-06 (11th Cir. 2009); Crenshaw v. Lister, 556 F. 3d 1283, 1290 (11th Cir. 2009" and "[i]n order to determine whether the amount of force used by a police officer was proper, a court must ask 'whether a reasonable officer would believe that this level of force is necessary in the situation at hand.'" Lee v.

Ferraro, 284 F. 3d 1188, 1197 (11th Cir. 2002) (quoting Willingham v. Loughnan, 261 F. 3d 1178, 1188 (11th Cir. 2001)); Vinyard v. Wilson, 311 F. 3d 1340, 1347 (11th Cir. 2002) ("The question is whether the officer's conduct is objectively reasonable in light of the facts confronting the officer."). The reasonableness of a particular use of force must be judged on a case-by-case basis "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.A. at 396; Long v. Slaton, 508 F. 3d 576, 580 (11th Cir. 2007); Post v. City of Fort Lauderdale, 7 F. 3d 1552, 1559 (11th Cir. 1993).

Based upon the facts, it is without question that Griggs had authority to be a part of the pursuit of D.M.C. and others and, unfortunately, to have his gun drawn. Griggs had, at the very least, arguable probable cause to engage in the pursuit. Moore v. Gwinnett County, 967 F. 2d 1495, 1497 (11th Cir. 1992); Montonte v. Carr, 114 F. 3d 184 (11th Cir. 1997) (because only arguable probable is required, the inquiry is not whether probable cause actually existed, but whether an officer reasonably could have believed that probable cause existed in light of the information the officer possessed); see also, Eubanks v. Gerwen, 40 F.3d 1157, 1160 (11th Cir. 1994). No causes of action could exist against Griggs. His actions were appropriate insofar as his participation in the chase of D.M.C. To survive Fourth Amendment scrutiny, Griggs would have to successfully pass this first point of inquiry which he does clearly.

2. *The District Court was Correct when it held that the accidental shooting under the facts, did not rise to the level of a Fourth Amendment Violation – because Griggs' conduct prior to the shooting was reasonable.*

The District correctly held that the accidental shooting, while tragic, was not an illegal seizure-under the Fourth Amendment when one examines Griggs' conduct preceding the shooting. The District Court found that an apprehension by deadly force is a seizure subject to the reasonableness requirements of the Fourth Amendment. Tennessee v. Garner, 471 U.S. 1, 5 (1985). Next, the District held that under Graham v. Connor, 490 U.S. 386 (1986) the court's inquiry is whether an officer's actions are "objectively reasonable" in light of the facts and circumstances, without regard to their underlying intentions. *Graham*, at 388.

As stated above, the analysis for these facts is simple and straightforward. The facts show that D.M.C. was passively-resistant and was still a potential threat to the officers, specifically Griggs. Therefore, as the District Court stated, it was not unreasonable for Griggs to have his gun drawn during the pursuit and approach toward D.M.C. Furthermore, Griggs and the other officers were of the reasonable belief that D.M.C. may have assaulted another officer earlier and had no way of knowing if D.M.C. was armed because one of D.M.C.'s hands was concealed from view. *See*, Jackson v. Sauls, 206 F. 3d 1156 (11th Cir. 2000) (having a gun drawn and ordering a person to stop and lie on the ground does not necessarily constitute excessive force).

Furthermore, in light of the facts, the District Court correctly concluded that Griggs' failure to holster prior to approaching D.M.C. was not excessive because the weapon-mounted tactical light was being used to locate D.M.C. Once D.M.C. was located and Griggs requested light from Officer Henry, Griggs pushed-kicked D.M.C to the ground and attempted to re-holster his weapon. At that time, the gun accidentally fired.

The District Court, using the facts as its guide, held that the circumstances made Griggs' actions reasonable and that a failure to holster the gun was not excessive. *See* <u>Pleasant v. Zemieski</u>, 895 F. 2d 272 (6th Cir.1990). The District Court concluded that "tense and quick-moving circumstances" do not allow courts to look at the situation in calm, safe hindsight. Quoting *Pleasant*, the District Court stated: "This Court 'cannot use wisdom of hindsight to judge [the officer's] actions [and] must be careful not to 'deny the practical difficulties of attempting to assess the suspect's dangerousness.'" *Pleasant*, 895 F. 2d at 276 (quoting *Graham*, 490 U.S. at 396 and *Garner*, 471 U.S. at 20). As such, no liability can be established against Griggs.

## CONCLUSION

For the foregoing reasons, Appellee respectfully request that the decision of the District Court regarding Appellants' federal claims against Appellee be affirmed. As set forth by the caselaw cited and the specific facts of this case, no

27

Fourth Amendment liability can attach to Appellee. Again, the facts of this case are tragic and sad, but under the law, Appellees' actions were reasonable under the circumstances.

Respectfully submitted,

JAMES E. DEARING, JR.
GA Bar No.: 215090
Attorney for Defendant Griggs/Appellee

JAMES E. DEARING, JR., PC.
730 Peachtree Street, NE, Suite 460
Atlanta, GA 30308
(404) 870-0010 phone
(404) 870-0008 facsimile
jdearing@jed-law.com

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing Appellee Benjamin W. Grigg's Brief in Response to Brief of Appellants complies with the 14,000 word type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure, as modified by 11th Cir. Rule 32-4.  This Response Brief contains approximately 4,993 words, including footnotes, and was prepared using Times New Roman 14-point typeface.

JAMES E. DEARING, JR.
GA Bar No.: 215090
Attorney for Benjamin W. Griggs
Defendant/Appellee

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date I served the foregoing Appellee

Benjamin W. Grigg's Brief in Response to Brief of Appellants via electronic filing

upon:

Craig T. Jones
The Orlando Firm, LLC
Decatur Court, Suite 400
315 West Ponce de Leon Avenue
Decatur, GA 30030

Walter B. Yarbrough
Office of the Fulton County Attorney
141 Pryor Street, SW, Suite 4038
Atlanta, GA 30303

This 25th day of February, 2015.

JAMES E. DEARING, JR.
GA Bar No.: 215090
Attorney for Benjamin W. Griggs
Defendant/Appellee

JAMES E. DEARING, JR., PC.
730 Peachtree Street, NE, Suite 460
Atlanta, GA 30308
(404) 870-0010 phone
(404) 870-0008 facsimile
jdearing@jed-law.com