CASE NO. 14-15629-F

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
_____

**TONY SPEIGHT and FELICE CUNNINGHAM,**
**Individually and as Parents and Natural Guardians**
**of D.M.C., a Minor,**

Plaintiffs/Appellants,

v.

**BENJAMIN GRIGGS and FULTON COUNTY, GEORGIA,**

Defendants/Appellees.
_____

ON APPEAL FROM A FINAL JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA
_____

# REPLY BRIEF OF APPELLANTS
_____

CRAIG T. JONES
Ga. Bar No. 399476
THE ORLANDO FIRM, P.C.
Decatur Court, Suite 400
315 West Ponce de Leon Avenue
Decatur, Georgia  30030
(404) 373-1800
fax (404) 373-6999
craig@orlandofirm.com

Attorney for Appellants

# <u>TABLE OF CONTENTS</u>

Table of Authorities…………………………………...................................3

Objection to Appellees' Failure to Comply With Court Rules …………………6

Reply to Appellees' Arguments…….………………………………….............7

**A.    Appellants did not waive their right to a direct appeal from the final order by not filing a cross-appeal in Appellee Griggs' prior interlocutory appeal from the trial court's denial of state law official immunity**……………………………………………………...7

**B.    Appellees are not viewing the facts in the proper light**…………………12

**C.    While summary judgment should be reversed as to Fulton County because the trial court never reached the merits of the *Monell* claim, a jury could nonetheless find that county policy was a moving force behind the violation of DMC's Fourth Amendment rights**……..……..15

Conclusion…………………………………………………………………..21

Certificate of Compliance…………………………………………….....23

Certificate of Service…………………………………………………...24

# <u>TABLE OF AUTHORITIES</u>

CASES

*Board of Comm'rs of Bryan County v. Brown*,
    520 U.S. 397, 407 (1997) …………….……………………………………..18

*Caterpillar Inc. v. Lewis*,
    519 U.S. 61, 74 (1996) …………..………………………………………9

*City of Canton v. Harris*,
    489 U.S. 378 (1989) …………………………………………………..…16,17

*Connick v. Thompson*,
    --- U.S. ---, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011)……...…18,19

*Coopers & Lybrand v. Livesay*,
    437 U.S. 463 (1978) ………………………………………………...…9

*Cummings v. Dekalb County*,
    24 F.3d 1349 (11th Cir. 1994) ………………………………………....11

*Fundiller v. City of Cooper City*,
    777 F. 2d 1436 (11th Cir. 1985) ………………………………..…20

*Glass v. Gates*,
    311 Ga. App. 563, 716 S.E.2d 611, 621 (2011) ………………………10

*Grammens v. Dollar*,
    287 Ga. 618, 697 S.E.2d 775 (2010) ……………………………….…10

*Harris v. Coweta County*,
    Case No. 3:01CV148WBH, 2003 WL 25419527 (N.D. Ga. 9/25/03), *affirmed in part, reversed in part*, 406 F.3d 1307, *vacated and superseded by* 433 F.3d 807 (11th Cir. 2005), *reversed on other grounds*, *Scott v. Harris*, 550 U.S. 372 (2007) …………...............................................……..17,18

*Hicks v. McGee*,
    289 Ga. 573, 713 S.E.2d 841 (2011) …………..………………………..10

*Hudson v. Hall*,
231 F.3d 1289 (11th Cir. 2000) …………………………………………9,11

*Jackson v. Humphrey*,
No. 14-10183, 2015 WL 151116, 2015 U.S. App. LEXIS 469
(11th Cir. January 13, 2015) …………………………………………….8

*Johnson v. Jones*,
515 U.S. 304 (1995) ………………………………………………………11

*Larez v. City of Los Angeles*,
946 F. 2d 630 (9th Cir. 1991) …………………………………………….20

*McRorie v. Shimoda*,
795 F. 2d 780 (9th Cir. 1986) …………………………………………….20

*Mitchell v. Forsyth*,
472 U.S. 511 (1985) ………………………………………………………11

*Monell v. Dept. of Social Services*,
436 U.S. 658 (1978) ……………………………………….10,11,15,16,18,20

*Rux v. Republic of Sudan*,
461 F.3d 461, 475 (4th Cir. 2006) ……………………………………...12

*Scott v. Harris*,
550 U.S. 372 (2007) ………………………………………………………18

*Swint v. Chambers County Com'n*,
514 U.S. 35, 50 (1995)…..………………………………………………..9

*Tennessee v. Garner*,
471 U.S. 1 (1985) …………………………………………………………17

*Tolan v. Cotton*,
134 S. Ct. 1861 (2014) ………………………………………………13,15

*Young v. City of Augusta, Ga.,*
    59 F.3d 1160 (11th Cir.1995) …………………………………………..18

STATUTES AND CONSTITUTIONAL PROVISIONS

The Fourth Amendment……………………………………………….................10

28 U.S.C. §1291 ………………………………………….……….............7

28 U.S.C. §1292(b) …………………………………………..……………9

42 U.S.C. §1983 ………………………………………….…..…………..16,17

COURT RULES

F.R.A.P. 31(a)(1) …………………………………………………….......6

F.R.A.P. 31(c) …………………………………………………………..6

11th Cir. R. 31-1(a) ……………………………………………………..6

## OBJECTION TO APPELLEES' FAILURE
## TO COMPLY WITH COURT RULES

Neither Appellee has filed a timely brief.  Because Appellants' brief was filed and served on January 22, 2015, both Appellees' briefs were due February 21, 2015, but Fulton County did not file either its brief or appearance of counsel until February 24, 2015 and Officer Griggs did not file his brief and appearance of counsel until February 25, 2015.  F.R.A.P. 31(a)(1); 11th Cir. R. 31-1(a).  The consequence of a late filing by Appellees under F.R.A.P. 31(c) is that they are not permitted to participate in oral argument unless the Court permits otherwise.

While denying Appellees the opportunity to participate in oral argument would be an appropriate sanction if Appellants' request for oral argument were granted, Rule 31(c) would have no effect if argument were not granted. Accordingly, Appellants request that oral argument be granted and that Appellees be excluded from participation.  On the other hand, if the prospect of hearing from one side only makes the Court less inclined to grant argument at all, Appellants would rather have an oral argument in which Appellees were allowed to participate than be in the ironic position of having Appellees' waiver of that right used as a justification for denying Appellants' request.  However unappealing the idea of a one-sided argument may be, Rule 31(c) would do nothing to deter untimely filings unless the Court were to schedule oral argument and exclude Appellees from it.

6

## REPLY TO APPELLEES' ARGUMENTS

**A.    Appellants did not waive their right to a direct appeal from the final order by not filing a cross-appeal in Appellee Griggs' prior interlocutory appeal from the trial court's denial of state law official immunity**

Appellee Fulton County argues that Appellants somehow waived their absolute right to a direct appeal from a final order under 28 U.S.C. §1291 because they "could have" filed a cross-appeal in Appellee Griggs' interlocutory appeal based on the collateral order doctrine.  (Fulton County Brief, pp. 15-18).  This argument attempts not only to stretch the boundaries of pendent appellate jurisdiction beyond reason, but it attempts to make it mandatory rather than permissive.

First of all, the mere fact that an appellant *could* have filed a cross-appeal – assuming that a cross-appeal would have been proper given the dissimilarity of the issues – does not require the appellant to do so where the right to a final appeal exists.  Even if issues that could have been raised in a cross-appeal were inextricably intertwined with issues raised in a subsequent appeal (which is clearly not the case here), there is nothing in Section 1291, the Rules, or case law that says a party *must* file a cross-appeal – just as there is nothing requiring this Court to exercise pendant appellate jurisdiction every time a party seeks to invoke it.

The "cross-appeal rule" cited by Fulton County does not waive a party's

right to a subsequent final appeal where a cross-appeal could have been filed, but it merely provides that an appellee cannot challenge a trial court ruling in the appellant's interlocutory appeal without filing a cross-appeal. The primary authority relied upon by the County simply holds that an appellee who had not filed a cross-appeal could not challenge a trial court's grant of qualified immunity for conduct during one time frame as part of the *appellant's* interlocutory appeal from the denial of immunity for such conduct during a later time frame. *Jackson v. Humphrey*, No. 14-10183, 2015 WL 151116, 2015 U.S. App. LEXIS 469 (11th Cir. January 13, 2015) (physical precedent only). In *Jackson*, the issue that the plaintiffs should have raised in a cross-appeal, rather than in response to the defendants' appeal, was the qualified immunity of the appellants at two different points in time. The appellee in *Jackson* tried to challenge the trial court's grant of immunity for the earlier time frame, and this Court held that it could not review that ruling since the appellee had not filed a cross-appeal. In other words, the *Jackson* court could not exercise pendent appellate jurisdiction over issues raised by the appellee without a cross-appeal under circumstances where a cross-appeal would have been proper. That is not this case.

This case is an appeal as a matter of right from a final order that was not final – and thus not appealable as a matter of right – at the time of the interlocutory appeal by Officer Griggs. The only way Plaintiffs/Appellants could have cross-

8

appealed at that time would have been to move for the trial court to certify a discretionary interlocutory appeal under 28 U.S.C. §1292(b) since the ruling against them was not a final order. Section 1292(b) certification is reserved for the most exceptional cases. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996); *Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978).

Unlike the plaintiffs in *Jackson*, Plaintiffs/Appellants did not raise any challenge to the trial court order in the interlocutory appeal. Fulton County was not a party to that appeal, which was an immediate review of a denial of official immunity under Georgia law to Officer Griggs only. Plaintiffs could not have cross-appealed if they had wanted to. *See, generally, Hudson v. Hall*, 231 F.3d 1289, 1292 (11th Cir. 2000) (citing *Swint v. Chambers County Com'n*, 514 U.S. 35, 50 (1995)) ("the district court's grant of summary judgment to the county and the official capacity defendants does not fall within our pendent appellate jurisdiction"). Because there was no basis for a cross-appeal, and because Plaintiffs did not attempt to challenge the trial court's ruling as part of Griggs' appeal, the cross-appeal rule that Fulton County has taken out of context has no bearing on this case. Perhaps that is why Griggs, who *was* a party to the first appeal, has not followed the County down this road.

The County is simply wrong when it cites *Jackson* for the proposition that

the *Monell* claim[1] could have been considered under the Court's pendent appellate jurisdiction to "address otherwise nonappealable orders if they are inextricably intertwined with an appealable decision or if review of the former decision is necessary to ensure meaningful review of the latter." (Fulton County Brief, p. 18). First of all, the trial court's grant of summary judgment on all the federal claims (including the *Monell* claim) was not "otherwise nonappealable" because of the availability of a direct appeal once the Order became final.  Secondly, the ruling on the federal claims was not "inextricably intertwined" with the ruling on the collateral issue of state law official immunity – which turned on whether Griggs breached a ministerial or discretionary duty under Georgia law,[2] and which could be decided wholly and independently from the Fourth Amendment issues that are the subject of this appeal.[3]  Accordingly, review of the ruling on the federal claims was not "necessary to ensure meaningful review" of the ruling on the state official immunity defense, and they could not be decided together on a direct interlocutory appeal brought under the collateral order doctrine pursuant to *Mitchell v. Forsyth*, 472 U.S. 511 (1985).  *See also Johnson v. Jones*, 515 U.S. 304 (1995).

---

[1] *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

[2] *Glass v. Gates*, 311 Ga. App. 563, 574-75, 716 S.E.2d 611, 621 (2011) (citing *Grammens v. Dollar,* 287 Ga. 618, 619, 697 S.E.2d 775 (2010) and *Hicks v. McGee,* 289 Ga. 573, 575–576, 713 S.E.2d 841 (2011)); *see also* trial court's discussion of official immunity. (R. 94, pp. 42-51).

[3] See discussion of Fourth Amendment law in Brief of Appellants, pp. 28-56.

10

The sole subject of Griggs' interlocutory appeal was the trial court's order denying him official immunity under state law, and this Court's subject matter jurisdiction over that appeal was strictly limited to the issue of Griggs' personal immunity from suit. *Id.*; *Cummings v. Dekalb County*, 24 F.3d 1349 (11th Cir. 1994). That issue is not "inextricably intertwined" with the federal *Monell* claim against Fulton County, which was not even a party to the Griggs appeal, and Plaintiffs Speight and Cunningham did not attempt to challenge any aspect of the trial court's ruling in that appeal – and it would have been improper if they had because the only issue that was ripe for review on an interlocutory basis was Griggs' official immunity. *See Hudson,* 231 F.3d at 1292 ("We address in today's decision only Officer Hall's qualified immunity from personal liability.").

In any event, there is no basis for the County's bald assertion that "Appellants [sic] current appeal is waived because the Appellants failed to file their cross-appeal contemporaneously with Griggs…." (Fulton County Brief, p. 18). If that were the law, it would defeat the purpose of limited immediate review since plaintiffs would be required to cross-appeal on all issues in every case where a defendant appealed from an interlocutory order denying immunity. Because the defendant's interlocutory appeal would be as a matter of right and the plaintiff's would not, an application for discretionary appeal would have to be filed in every case, or else the defendants would claim that final appeal rights had been waived.

The County's argument advocates dual appeals by both sides in every case where a defendant claims immunity from suit, while vitiating the right to a direct appeal from a final order as guaranteed by Section 1291.

Fulton County's position not only misconstrues the law, but it is untenable and should never become law. The fundamental policy underlying the Federal Rules of Appellate Procedure is one of finality: litigants are entitled to one appeal, at the end of the case, with only the most necessary exceptions. "Pendent appellate jurisdiction is an exception of limited and narrow application driven by considerations of need, rather than of efficiency." *Rux v. Republic of Sudan*, 461 F.3d 461, 475 (4th Cir. 2006). While it may be tempting in many cases to argue for less fragmentation and earlier consolidation of appeals, the authors of the Rules recognized that it would be far worse to have a system that is perpetually clogged with interlocutory appeals on every issue in every case. Except in limited circumstances, our system requires that trial courts shepherd each case to its final conclusion before appellate courts get involved. Sometimes that results in multiple appeals, but most of the time it does not. This appeal is not only proper, but it falls squarely within that tradition.

**B.    Appellees are not viewing the facts in the proper light**

Appellees' characterization of the facts is not consistent with the Supreme Court's most recent iteration of the summary judgment standard in *Tolan v.*

*Cotton*, 134 S. Ct. 1861 (2014).  Without repeating the summary of facts in their principal brief, Appellants would like to respond specifically to a factual mischaracterization contained in Officer Griggs' brief, which argues that Griggs "had no way of knowing if DMC was armed because one of DMC's hands was concealed from view."  (Griggs Brief, p. 25).  That is a distortion of the record.

Deputy Henry was a few yards away from Officer Griggs at the time of the shooting.  While Deputy Henry did say at one point that he could not see both of DMC's hands, he was referring to an earlier point in time, when they first saw DMC in the woods and before he stepped out from behind a tree and got down on his knees.  (R. 79 – 47:7-48:24).  After DMC stepped out from behind the tree and got down on his knees, he raised his hands above his head.  (R. 79 – 18:16-24, 24:16-25, 47:7-23, 48:11-17, Ex. 3).  It can be inferred from this testimony, and the manner in which Deputy Henry raises his hands demonstratively in his video deposition, that it was clear by this point that DMC had nothing in his hands.  (R. 98, video at 43:14-29).  Indeed, Deputy Henry says that he saw no weapon in DMC's open and raised hands.  (R. 79 – 47:14-17).

Here are the portions of Deputy Henry's testimony that both Griggs and the trial court are apparently relying on to draw the impermissible inference that one of DMC's hands was concealed at the time of the shooting:

Q.  Okay. When he put his hands up and said, I think you said, "okay, okay, okay, I give," were you able to see both of his hands?

A.  No. **What I saw was the right side, because if I'm facing the tree, he was behind it. So he slowly stepped out.** And I saw on the right side of him, and I saw his hands like this (indicating).

Q.  Okay. **You didn't see a weapon --**

A.  And then --

Q.  **-- in his hand?**

A.  **No, I did not.**

Q.  Go ahead. You can go --

A.  **And then, and then he started to get down -- he got down on his knees.**

Q.  Did you instruct him to get on his knees or did he just do it on his own?

A.  He did it on his own.

Q.  And by this time, this was -- was Griggs or McHugh close at this point or it was just you and the plaintiff?

A.  Well, from what I remember is **when he got down on his knee, shortly thereafter Griggs appeared.**

Q.  Okay.

A.  So --

Q.  Was he looking -- I'm sorry. Go ahead. Go ahead. I'm sorry.

A.  I don't know how far away Griggs was when Marco started barking. But I know shortly after, you know, the guy was down, Griggs appeared.

Q.  Did you have eye contact with the plaintiff, with this individual?

A.  I could see him. I could see -- yes, I could see him. I didn't have particularly eye contact with him, but **I could see where he was, I could see that his hands was up, and I could see that he had gotten down.**

(R. 79 – 47:7-48:17) (emphasis added).

It is clear from this testimony that Deputy Henry could only see the right

half of DMC's body when he first spotted him behind the tree, but once he stepped

14

out from the tree, got down on his knees, and put his hands up, it is equally clear that both of DMC's hands were plainly visible. *Id.* This is the testimony of a Fulton County deputy sheriff, a fellow law enforcement officer on the payroll of the same government that employs Officer Griggs. The jury may choose not to believe Deputy Henry's testimony, but it cannot be said as a matter of law that one of DMC's hands was concealed at the time he was shot because Griggs, as the moving party on a motion for summary judgment, is entitled to no favorable inferences. *Tolan*, 134 S. Ct. at 1865-66.

**C.**    **While summary judgment should be reversed as to Fulton County because the trial court never reached the merits of the *Monell* claim, a jury could nonetheless find that county policy was a moving force behind the violation of DMC's Fourth Amendment right**

As stated in Appellants' principal brief, the Court should vacate and remand the judgment in favor of Fulton County because the trial court never reached the merits of the *Monell* claim – simply holding that there could be no county liability if there were no underlying constitutional violation. But because Fulton County raised the merits of the *Monell* claim in its brief, it will be addressed here.

The *Monell* claim in this case only comes into play if the jury finds that the shooting was accidental but resulted from a constitutional violation. Plaintiffs' *Monell* claim is for failure to train, alleging that "the problem of unintended firearms discharges resulting from intentional police actions is a serious area of

law enforcement for which the need for additional training was obvious in the years leading up to the shooting of DMC by Defendant Griggs, but Defendant Fulton County failed to develop and implement appropriate policies, oversight and training to address that problem." (R. 66, ¶30D).    Plaintiffs allege that the "county's failure to train Defendant Griggs and other officers in an area of law enforcement in which the need for training was obvious can be construed as deliberate indifference … to an obvious training need [that] was a moving force behind the unintended discharge of Griggs' gun when his intent was to use only nonlethal force…." (R. 66, ¶34B).

Under *City of Canton v. Harris*, 489 U.S. 378 (1989), failure to train claims are analyzed as follows:

> ...The inadequacy of police training may serve as the basis for Section 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.... [I]t may happen that in light of the duties assigned to specific officers or employees **the need for more or different training is so obvious**, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. **In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury**.

489 U.S. at 388-390 (emphasis added).  In a now famous footnote, the Court clarified its holding as follows:

16

> For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, **the need to train officers in the constitutional limitations on the use of deadly force … can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.** It could also be that the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are "deliberately indifferent" to the need.

*Id.*, fn. 10 (citing *Tennessee v. Garner,* 471 U.S. 1 (1985)) (emphasis added). A jury could find that the county was deliberately indifferent to an obvious need for "more or different training" to avoid unintended firearms discharges while intentionally using force.

There are two methods to establish a failure to train under *City of Canton*: 1) by establishing a pattern of incidents that demonstrates the need for more or better training; or 2) by failing to give training in areas where there is an obvious need for training, in which case it is not necessary to establish a pattern. *Id.* "One of the ways a plaintiff may demonstrate a county's deliberate indifference is by showing that the need for a particular type of training is obvious, **even without prior incidents to place the municipality on notice**." *Harris v. Coweta County*, Case No. 3:01CV148WBH, 2003 WL 25419527 at *8-10 (N.D. Ga. 9/25/03), *affirmed in part, reversed in part*, 406 F.3d 1307, *vacated and superseded by* 433 F.3d 807 (11th Cir. 2005), *reversed on other grounds, Scott v. Harris*, 550 U.S. 372 (2007)

(citing *Young v. City of Augusta, Ga.,* 59 F.3d 1160, 1172 (11th Cir.1995)) (trial court found genuine issues of material fact supporting *Monell* liability for failure to train that were not addressed in interlocutory appeal on qualified immunity) (emphasis added).  Plaintiffs are not trying to infer the existence of a pattern from particular prior incidents, but are instead relying upon the fact that accidental discharges have become nationally recognized as a serious law enforcement problem that is not being adequately addressed in use of force training.  (R. 74 – Key Aff., pp. 12-18).

The "obvious need" language of City of Canton was recently revisted – and affirmed – by the Supreme Court in *Connick v. Thompson*, --- U.S. ---, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011).  In *Connick*, the Court made clear that the municipality's knowledge of an "obvious need" for training can be actual or constructive – meaning it can be on notice based on what it should have known rather than what it knew or claims to have known.  "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program."  *Id.* (citing *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 407 (1997)).  The alleged training deficiency in *Connick* was the failure to train prosecutors in their duty to turn over exculpatory *Brady* material to criminal

defendants, and the Court distinguished that fact pattern while reinforcing the

applicability of *City of Canton* to police officers as follows:

> In *Canton,* the Court left open the possibility that, "in a narrow range of circumstances," **a pattern of similar violations might not be necessary to show deliberate indifference**. *Bryan Cty., supra,* at 409, 117 S. Ct. 1382. The Court posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force. *Canton, supra,* at 390, n. 10, 109 S.Ct. 1197. Given the known frequency with which police attempt to arrest fleeing felons and the "predictability that an officer lacking specific tools to handle that situation will violate citizens' rights," the Court theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the "highly predictable consequence," namely, violations of constitutional rights. *Bryan Cty., supra,* at 409, 117 S.Ct. 1382. **The Court sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under §1983 without proof of a pre-existing pattern of violations.**
>
> Failure to train prosecutors in their *Brady* obligations does not fall **within the narrow range of *Canton*'s hypothesized single-incident liability**. The obvious need for specific legal training that was present in the *Canton* scenario is absent here. Armed police must sometimes make split-second decisions with life-or-death consequences. There is no reason to assume that police academy applicants are familiar with the constitutional constraints on the use of deadly force. And, in the absence of training, there is no way for novice officers to obtain the legal knowledge they require. Under those circumstances there is an obvious need for some form of training.

131 S. Ct. at 1361, 179 L. Ed. 2d 417 (emphasis added).  Notably, the highlighted

language makes clear that *City of Canton* permits *Monell* liability based on a single

unconstitutional incident where the need for training police officers is sufficiently obvious that the failure to train can be construed as deliberate indifference.

The inference of deliberate indifference is bolstered by the fact that Fulton County saw no need to develop a training program to prevent unintentional discharges until someone was grievously injured.   The department's claim that there were no prior unintentional shootings resulting in injury does not lessen the County's obligation to provide training to avoid them, given the obviousness of the problem and its potential catastrophic consequences.  There is no "free bite" rule.

Deliberate indifference can also be inferred from the fact that Griggs was not disciplined for shooting DMC, even though his conduct was contrary to how the county claims he was trained. That is not to say that *Monell* liability can be imposed for subsequent ratification that could not have caused a prior act to occur. *Compare Fundiller v. City of Cooper City,* 777 F. 2d 1436 (11th Cir. 1985). However, a municipality's response to an incident does authorize an inference as to what its policy or custom actually was.   "Policy or custom may be inferred if, after [constitutional violations], officials took no steps to reprimand or discharge the[ir subordinates], or if they otherwise failed to admit the [subordinate's] conduct was in error." *McRorie v. Shimoda*, 795 F. 2d 780 (9th Cir. 1986), *cited with approval in Larez v. City of Los Angeles*, 946 F. 2d 630 (9th Cir. 1991).

In the words of Plaintiffs' expert, "the failure to properly train Corporal

20

Griggs by the Fulton County Police Department was systemic. The administration had no cohesive program to address unintentional discharge." (R. 74-2 – Key Aff., p. 18). A warning by POST that "unintentional discharges are a commonly occurring problem among police departments and have grave consequences … should have caused the FCPD to initiate a comprehensive program for dealing with unintentional discharges." (R. 74-2 – Key Aff., p. 13). The department failed to do so, however, even though "the information discovered by Lieutenant Nable after the DMC shooting [which was subsequently incorporated into the department's training program] was readily available prior to the shooting." (R. 74-2 – Key Aff., p. 13). Reasonable jurors could construe that as deliberate indifference for which Fulton County is liable, but the sufficiency of that evidence should be determined by the trial court before the issue is addressed on appeal.

## <u>CONCLUSION</u>

For the foregoing reasons, as well as those stated in their principal brief, Plaintiffs/Appellants respectfully request that the judgment of the trial court be reversed and that the case be remanded for further proceedings.

Respectfully submitted this 2nd day of March, 2015.

*/s/ Craig T. Jones*

_____

CRAIG T. JONES
Ga. Bar No. 399476
Attorney for Plaintiffs/Appellants

21

THE ORLANDO FIRM, P.C.
Decatur Court, Suite 400
315 West Ponce de Leon Avenue
Decatur, Georgia  30030
(404) 373-1800
craig@orlandofirm.com

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing Reply Brief of Appellants complies with the page-length and type-space limitations set forth in Rule 32(a)(7) of the Federal Rules of Appellate Procedure, as modified by 11th Cir. Rule 32-4. This Brief contains 15 pages of text and approximately 4,211 words, including footnotes, and was prepared using Times New Roman 14-point font.

*/s/ Craig T. Jones*
_____
Craig T. Jones
Ga. Bar No. 399476
Attorney for Plaintiffs/Appellants

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this date I served the foregoing **REPLY BRIEF OF APPELLANTS** via electronic filing and First Class Mail upon:

> OFFICE OF THE COUNTY ATTORNEY
> Walter B. Yarbrough, Esq.
> Steven Rosenberg, Esq.
> 141 Pryor Street, Suite 4038
> Atlanta, GA 30303
>
> James E. Dearing, Jr., Esq.
> 730 Peachtree Street, N.E.
> Suite 560
> Atlanta, GA 30308

This 2nd day of March, 2015.

/s/ Craig T. Jones
CRAIG T. JONES
Ga. Bar No. 399476
Attorney for Plaintiffs/Appellants

THE ORLANDO FIRM, LLC
Decatur Court, Suite 400
315 West Ponce de Leon Avenue
Decatur, Georgia 30030
(404) 373-1800
craig@orlandofirm.com